**UNITED STATES
COURT OF INTERNATIONAL TRADE**

| **Court No. 20-03825** | **Court No. 20-03869** |
|---|---|
| N. AM. INTERPIPE, INC., | EVRAZ INC. NA, *et ano.*, |
| *Plaintiff,* | *Plaintiffs,* |
| v. | v. |
| UNITED STATES, | UNITED STATES, |
| *Defendant.* | *Defendant.* |
| **Court No. 21-00005** | **Court No. 21-00015** |
| AM/NS CALVERT LLC, | CALIFORNIA STEEL INDUS., INC., |
| *Plaintiff,* | *Plaintiff,* |
| v. | v. |
| UNITED STATES, | UNITED STATES, |
| *Defendant.* | *Defendant.* |
| **Court No. 21-00027** | **Court No. 21-00093** |
| VALBRUNA SLATER STAINLESS, INC., | VOESTALPINE HIGH PERFORMANCE METALS CORP., *et ano.*, |
| *Plaintiff,* | *Plaintiff,* |
| v. | v. |
| UNITED STATES, | UNITED STATES, |
| *Defendant.* | *Defendant.* |

Before: M. Miller Baker, Judge

# OPINION

[Denying motions to intervene.]

Dated: May 25, 2021

*Matthew J. McConkey*, Mayer Brown LLP of Washington, DC, on the papers for Proposed Defendant-Intervenor United States Steel Corporation in Court No. 20-3825.

*Roger B. Schagrin*, *Christopher T. Cloutier*, *Elizabeth J. Drake*, and *Luke A. Meisner*, Schagrin Associates of Washington, DC, on the papers for Proposed Defendant-Intervenor United States Steel Corporation in Court No. 20-3869.

*Timothy C. Brightbill*, *Laura El-Sabaawi*, *Tessa V. Capeloto*, and *Adam M. Teslik*, Wiley Rein LLP of Washington, DC, on the papers for Proposed Defendant-Intervenors American Cast Iron Pipe Company, Berg Steel Pipe Corp., Berg Spiral Pipe Corp., and Stupp Corporation in Court No. 20-3869.

*Thomas M. Beline* and *James E. Ransdell*, Cassidy Levy Kent (USA) LLP of Washington, DC, on the papers for Proposed Defendant-Intervenor United States Steel Corporation in Court Nos. 21-00005 and 21-00015.

*John R. Magnus*, TradeWins LLC of Washington, DC, on the papers for Proposed Defendant-Intervenor Electralloy/G.O. Carlson in Court Nos. 21-00027 and

21-00093, as well as for Proposed Defendant-Interve-
nors Crucible Industries LLC, Ellwood City Forge
Company, and Ellwood Specialty Steel in Court No.
21-00093.

*H. Deen Kaplan*, *Craig A. Lewis*, and *Nicholas W. La-
neville*, Hogan Lovells US LLP of Washington, DC, on
the papers for Plaintiffs North American Interpipe,
Inc., in Court No. 21-00005 and Evraz Inc. NA and Ev-
raz Inc. NA Canada in Court No. 20-03869. *Messrs.
Lewis* and *Laneville* were also on the papers for Plain-
tiff Valbruna Slater Stainless, Inc., in Court No.
21-00027.

*Paul C. Rosenthal*, *R. Alan Luberda*, *Joshua Morey*,
and *Julia A. Kuelzow*, Kelley Drye & Warren LLP of
Washington, DC, on the papers for Plaintiff AM/NS
Calvert LLC in Court No. 21-00005.

*Sanford Litvack*, *Andrew L. Poplinger*, and *R. Mat-
thew Burke*, Chaffetz Lindsey LLP of New York, NY,
on the papers for Plaintiff California Steel Industries,
Inc., in Court No. 21-00015.

*Matthew M. Nolan*, *Nancy A. Noonan*, Leah *N. Scar-
pelli*, and *Jessica R. DiPietro*, Arent Fox LLP of Wash-
ington, DC, on the papers for Plaintiffs Voestalpine
High Performance Metals Corp. and Edro Specialty
Steels, Inc., in Court No. 21-00093.

*Tara K. Hogan*, Assistant Director, *Brian M. Boynton*,
Acting Assistant Attorney General, and *Jeanne E. Da-
vidson*, Director, Commercial Litigation Branch, Civil

Division, U.S. Department of Justice of Washington, DC, on the papers for Defendant United States in all six cases. The following counsel were also on the papers for Defendant United States in the specified matters: *Kyle S. Beckrich*, Trial Attorney, Cases 20-03825 and 21-00005; *Joshua E. Kurland*, Trial Attorney, Case 20-03869; *Ann C. Motto*, Trial Attorney, Cases 21-00015 and 21-00093; and *Stephen C. Tosini*, Senior Trial Counsel, Case 21-00027. Of counsel on the papers for Defendant United States in all six matters were *Anthony D. Saler* and *Kimberly Hsu*, Office of Chief Counsel for Industry & Security, U.S. Department of Commerce of Washington, DC.

*Baker*, Judge: In these six cases, domestic entities that imported steel subject to national security tariffs challenge the Department of Commerce's denial of their requests to be excluded (exempted) from paying such tariffs and seek refunds of tariffs so paid. Several domestic steel producers that objected to Plaintiffs' exclusion requests before Commerce now seek to intervene in this litigation on the side of the government. The Court concludes that the proposed intervenors are ineligible to intervene as a matter of law and therefore denies their motions for the reasons explained below. Nevertheless, the Court reiterates its willingness to entertain motions to appear as *amici curiae. See* USCIT R. 76; *see also PrimeSource Bldg. Prods., Inc. v. United States*, 494 F. Supp. 3d 1307, 1335 (CIT 2021) (Baker, J., concurring) ("[E]xperienced litigators note that many of those benefits [of intervention] could be achieved simply by . . . outsiders . . . present[ing]

their views as *amici*.") (alterations in original) (quoting Caleb Nelson, *Intervention*, 106 Va. L. Rev. 271, 391 (2020)).

## Statutory and Regulatory Background

Section 232 of the Trade Expansion Act of 1962 authorizes the President to restrict imports of goods to "[s]afeguard[ ] national security." 19 U.S.C. § 1862. Pursuant to this authority, the President imposed a 25 percent ad valorem tariff on imports of certain steel products. *See* Proclamation 9705 of March 8, 2018, *Adjusting Imports of Steel into the United States*, 83 Fed. Reg. 11,625 (Mar. 15, 2018).

Proclamation 9705 also directed the Secretary of Commerce to exclude from the proclamation's duties "any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality" and further authorized the Secretary "to provide such relief based upon specific national security considerations." *Id.* at 11,627 ¶ 3.

Commerce accordingly issued an interim final rule authorizing U.S. importers to request an exclusion from Section 301 duties of any "[a]rticle [that] is not produced in the United States in a sufficient and reasonably available amount, is not produced in the United States in a satisfactory quality, or for a specific national security consideration." *Requirements for Submissions Requesting Exclusions from the Remedies*

*Instituted in Presidential Proclamations Adjusting Imports of Steel into the United States and Adjusting Imports of Aluminum into the United States; and the Filing of Objections to Submitted Exclusion Requests for Steel and Aluminum*, 83 Fed. Reg. 12,106, 12,110 (Dep't Commerce Mar. 19, 2018) (cleaned up).

Under this rule, exclusions do not relate to products generally—rather, they apply to specified quantities of subject products, and insofar as Commerce grants any importer's exclusion request, the exclusion applies for one year or until the submitting party has imported the full volume of material subject to the exclusion, whichever comes first. U.S. Dep't of Commerce, Bureau of Industry and Security, *232 Exclusion Process Frequently Asked Questions (FAQs)* Version 1.01, at 12 (June 18, 2019) (also noting that companies may obtain relief retroactive to the date the exclusion request was submitted) (accessed May 24, 2021).[1] Exclusions do not apply to other importers or purchasers, nor do they apply to other products. 83 Fed. Reg. at 12,107 ("Approved exclusions will be made on a product basis and will be limited to the individual or organization that submitted the specific exclusion request . . . ."); *232 Exclusion Process FAQs*, *above*, at 18 ("The company that filed the original exclusion request has exclusive rights[,] and a granted exclusion is non-transferable.").

---

[1]    https://www.bis.doc.gov/index.php/documents/section-232-investigations/2409-section-232-faq/file.

The interim final rule also allows "[a]ny individual or organization that manufactures steel articles in the United States" to object to exclusion requests. *Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*, 83 Fed. Reg. 46,026, 46,058 (Dep't Commerce Sept. 11, 2018). Insofar as an objector asserts "that it is not currently producing the steel identified in an exclusion request but can produce the steel within eight weeks," the objector "must identify how it will be able to produce the article within eight weeks." *Id*.

## Factual Background

Plaintiffs in these six cases are domestic manufacturers and one domestic distributor that import various types of steel subject to Section 232 tariffs.[2] The plaintiffs applied to Commerce for exclusions from the tariffs, and other domestic companies objected to the requests on various grounds, typically based on the claim that they could satisfactorily produce all of, or

---

[2] Plaintiff North American Interpipe imports steel pipe products and then distributes them. *See* Case 20-3825, ECF 5, at 3, 5. Plaintiffs Evraz, AM/NS Calvert, California Steel, Valbruna, and Voestalpine manufacture various steel products and import steel used in such manufacturing. *See* Case 20-3869, ECF 35-2, at 4–5 (Evraz); Case 21-5, ECF 2, at 3–4 (AM/NS Calvert); Case 21-15, ECF 2, at 2–3 (California Steel); Case 21-27, ECF 4, at 3–4 (Valbruna); Case 21-93, ECF 2, at 3–5 (Voestalpine).

sufficient substitutes for, the material that was the subject of the exclusion requests.

Commerce subsequently denied all (or, in one case, substantially all) of Plaintiffs' exclusion requests on various grounds. Significantly for present purposes, the plaintiff(s) in each case paid the challenged duties and imported the steel products in question notwithstanding the exclusion denials.[3]

The plaintiffs then brought these six suits under this Court's residual jurisdiction. *See* 28 U.S.C. § 1581(i). Plaintiffs assert Administrative Procedure Act claims contending that Commerce failed to consider relevant factors and evidence, failed to give adequate explanations for its decisions, and in some instances considered legally irrelevant factors. *See* 5 U.S.C. §§ 701–06. As relief, the plaintiffs ask this

---

[3] Case 20-3825, ECF 23, at 14–15 ("U.S. Steel never actually supplied the required steel inputs, and [North American Interpipe] was forced to pay the 25 percent duties in order to import the steel necessary to maintain its operations . . . ."); Case 20-3869, ECF 33, at 8 (Evraz, same argument as to Pipe Producers); Case 21-5, ECF 21, at 4 (Calvert noting it imported steel and paid the Section 232 duties); Case 21-15, ECF 18, at 5 (California Steel, same); Case 21-27, ECF 19, at 9 (". . . Valbruna was unable to, and therefore did not, purchase any of these products from Electralloy, but instead was forced to pay the 25 percent Section 232 tariffs . . . ."); Case 21-93, ECF 27, at 6 (Voestalpine stating it paid the Section 232 tariffs).

Court to order refunds or remand these cases back to
Commerce for further proceedings.

## The Pending Intervention Motions

Several domestic parties that asserted objections to
Plaintiffs' exclusion requests before Commerce now
move to intervene in these cases as party defendants
and have tendered proposed answers. United States
Steel Corporation seeks to intervene in four of these
cases;[4] four members of the American Line Pipe Pro-
ducers Association seek to intervene in their individ-
ual capacities[5] (collectively, "Pipe Producers") in a sin-
gle case;[6] Electralloy/G.O. Carlson seeks to intervene
in two others;[7] and Crucible Industries LLC, Ellwood
City Forge Company, and Ellwood Specialty Steel all
seek to intervene in a single case.[8]

---

[4] U.S. Steel seeks to intervene in Cases 20-3825 (ECF 12),
20-3869 (ECF 10), 21-5 (ECF 9), and 21-15 (ECF 12).

[5] American Cast Iron Pipe Company, Berg Steel Pipe Corp.,
Berg Spiral Pipe Corp., and Stupp Corporation. In their
supplemental briefing, the Pipe Producers clarified that
the association itself does not seek to intervene. Case
20-3869, ECF 30, at 1.

[6] The Pipe Producers seek to intervene in Case 20-3869
(ECF 17).

[7] Electralloy seeks to intervene in Cases 21-27 (ECF 9) and
21-93 (ECF 10).

[8] Crucible, Ellwood City, and Ellwood Specialty all seek to
intervene in Case 21-93 (Crucible, ECF 13; Ellwood City

The plaintiffs oppose intervention. The government filed papers that fail to take a direct position but express doubts on the propriety of intervention.[9]

## Discussion

All proposed intervenors move to intervene as a matter of right under Rule 24(a)(2) (based on a claimed interest in the transactions at issue) and, alternatively, for permissive intervention under Rule 24(b)(1)(B) (based on a claimed shared defense). Some of the intervenors also move for permissive intervention under Rule 24(b)(1)(A) (based on a claimed conditional right to intervene by statute).[10] The Court considers each ground in turn, but first addresses the threshold question of the proposed intervenors' standing.

---

and Ellwood Specialty, ECF 16). Because the two Ellwood entities filed a single motion that refers to them jointly as "Ellwood," this opinion does the same.

[9] Cases 20-3825 (ECF 33), 20-3869 (ECF 49), 21-5 (ECF 20), 21-15 (ECF 21), 21-27 (ECF 21), and 21-93 (ECF 28).

[10] U.S. Steel invokes Rule 24(b)(1)(A) in Cases 20-3825 (ECF 22, at 14) and 20-3869 (ECF 32, at 14), but it does not do so in Cases 21-5 and 21-15. The Pipe Producers invoke Rule 24(b)(1)(A) in Case 20-3869 (ECF 17, at 5–6 (Pipe Producers discussing "conditional right to intervene by federal statute")). The other proposed intervenors do not invoke this provision.

# I. Intervenors' Article III standing burden

In a district court and the CIT, Article III requires as a threshold matter that a proposed intervenor—regardless of the basis upon which intervention is sought—demonstrate independent constitutional standing insofar as the proposed intervenor seeks any relief that is different from that sought by the existing parties to the case. *See PrimeSource*, 494 F. Supp. 3d at 1319–20 (Baker, J., concurring) (discussing *Town of Chester, N.Y. v. Laroe Estates*, 137 S. Ct. 1645 (2017), and *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020)). In view of this principle, a putative intervenor has the burden of demonstrating either its independent constitutional standing or its "piggyback standing," i.e., standing based on seeking the same relief sought by an existing party to the case. *See id*.[11]

---

[11] In Cases 20-3825 and 20-3869, the proposed intervenors filed motion papers either prior to or contemporaneously with the issuance of the *PrimeSource* decision that denied intervention in several cases challenging the President's Section 232 tariffs. The Court therefore directed the proposed intervenors in those cases to file supplemental papers addressing standing and other issues explored in the *PrimeSource* concurrence. Case 20-3825, ECF 18, at 2–3; Case 20-3869, ECF 26, at 2–3. As the later-filed moving papers of proposed intervenors in the other four cases indicated awareness of the *PrimeSource* decision generally, *see* Case 21-5, ECF 9, at 5 (generally citing *PrimeSource*), and of the issues explored in the concurrence specifically, *see id*.

In two of these cases, U.S. Steel disclaims seeking
any relief separate from that sought by the govern-
ment and has therefore established its piggyback
standing.[12] On the other hand, in two of the other
cases in which it seeks to intervene,[13] U.S. Steel ig-
nores the issue. Electralloy, Crucible, and Ellwood
likewise ignore the issue in motions that are largely
verbatim copies of the latter two filings from U.S.
Steel. Therefore, the Court denies the latter two mo-
tions from U.S. Steel, as well as those from Electralloy,
Crucible, and Ellwood, because they fail to even ad-
dress, much less establish, either their independent
constitutional standing or their piggyback standing as
required by Article III.

In Case 20-3869, the Pipe Producers stated at the
time of their filing that they did "not know what relief,
if any, Defendant intends to seek with respect to each

---

at 4 n.1; Case 21-15, ECF 12, at 4 n.1; Case 21-27, ECF 9,
at 4 n.1; Case 21-93, ECF 10, 13, and 16, all at 6 n.2, the
Court did not order supplemental briefing in those cases.

[12] *See* Case 20-3825, ECF 22, at 4 (". . . U.S. Steel seeks
relief that is identical to that already sought by the federal
government—*i.e.*, for this Court to uphold the govern-
ment's denial of the product exclusions requested by Plain-
tiff."); Case 20-3869, ECF 32, at 4 (same). In those cases,
U.S. Steel also asserts it has constitutional standing. Case
20-3825, ECF 22, at 14–15; Case 20-3869, ECF 32, at 14–
15 (same). The Court addresses this contention below in
connection with permissive intervention under Rule
24(b)(1)(A) and 28 U.S.C. § 2631(j)(1).

[13] Cases 21-5 and 21-15.

of Plaintiff's claims." Case 20-3869, ECF 30, at 2. That
said, however, the Pipe Producers made clear that
"[t]he only relief that Proposed Defendant-Intervenors
seek is for Plaintiff's [i.e., Evraz's] line pipe [exclusion]
claims to be denied." *Id.* at 3. As the government's
since-filed answer also seeks rejection of those claims,
*see* Case 20-3869, ECF 45, the Pipe Producers have
satisfied their Article III burden of establishing their
piggyback standing.[14]

## II. Intervention as of right (Rule 24(a)(2))

All the proposed intervenors invoke Rule 24(a)(2),
which provides in relevant part:

> *Intervention of Right.* On timely motion, the
> court must permit anyone to intervene who:
>
> . . . .
>
> (2) . . . claims an interest relating to the property
> or transaction that is the subject of the action,
> and is so situated that disposing of the action
> may as a practical matter impair or impede the
> movant's ability to protect its interest, unless

---

[14] The Pipe Producers also assert that they have independ-
ent constitutional standing. *See* Case 20-3869, ECF 30,
at 14. The Court addresses this contention below in connec-
tion with permissive intervention under Rule 24(b)(1)(A)
and 28 U.S.C. § 2631(j)(1).

existing parties adequately represent that inter-
est.

USCIT R. 24(a)(2).

This language is borrowed from Federal Rule of
Civil Procedure 24, which the Federal Circuit has in-
terpreted as imposing a four-part test: (1) the motion
must be timely; (2) the moving party must claim an
interest in the property or transaction at issue that is
" 'legally protectable'—merely economic interests will
not suffice," *Wolfsen Land & Cattle Co. v. Pac. Coast
Fed'n of Fishermen's Ass'ns*, 695 F.3d 1310, 1315 (Fed.
Cir. 2012) (quoting *Am. Mar. Transp., Inc. v. United
States*, 870 F.2d 1559, 1562 (Fed. Cir. 1989)); (3) "that
interest's relationship to the litigation must be 'of such
a *direct* and *immediate* character that the intervenor
will either gain or lose by the *direct* legal operation and
effect of the judgment,' " *id.* (quoting *Am. Mar.*, 870
F.2d at 1561) (emphasis in *Am. Mar.*); and (4) "the mo-
vant must demonstrate that said interest is not ade-
quately addressed by the government's participation,"
*id.* (quoting *Am. Mar.*, 870 F.2d at 1560).[15] As no party

---

[15] As explained in the *PrimeSource* concurrence, *see* 494
F. Supp. 3d at 1325 n.24 (Baker, J., concurring), while
*Wolfsen* and *American Maritime* involved Court of Federal
Claims Rule 24, the Federal Circuit applied authorities
that interpreted Federal Rule of Civil Procedure 24. *See
Wolfsen*, 695 F.3d at 1315–16; *Am. Mar.*, 870 F.2d at 1561.
The relevant Court of Federal Claims rule is—like this
Court's Rule 24—drawn verbatim from Federal Rule of

opposing intervention disputes—or could reasonably dispute—that the intervention motions were timely,[16] the Court therefore addresses the remaining three elements.

## A. Whether the proposed intervenors have legally protectable interests

The proposed intervenors all claim to have legally protectable interests in Commerce's denials of the plaintiffs' Section 232 exclusion requests. The reasons offered fall into two categories.

First, several of the proposed intervenors claim that they have various economic interests in preventing the plaintiffs from escaping Section 232 steel tariffs.[17] In two cases, U.S. Steel implies, without directly stating, that it has an economic interest by arguing

---

Civil Procedure 24, making the rationale of *Wolfsen* and *American Maritime* directly controlling in the Court of International Trade.

[16] All of the intervention motions were filed shortly after the commencement of these actions.

[17] *See* Case 21-15, ECF 12, at 6 (U.S. Steel arguing that Commerce's decision on an exclusion request "has a direct commercial and economic impact on U.S. Steel, which is why domestic producers like U.S. Steel are provided an opportunity to object in the first instance."); Case 21-5, ECF 9, at 6 (U.S. Steel making same argument); Case 21-27, ECF 9, at 5–6 (Electralloy, same argument); Case 21-93, ECF 10 (Electralloy), 13 (Crucible), and 16 (Ellwood), all at 9–10 (same argument).

that it has a "direct interest" in Commerce's decision
on the exclusion requests because "U.S. Steel can pro-
duce the exact products Plaintiff sought exclusions for"
and because "Plaintiff sought to undermine the pur-
pose of the Section 232 tariffs and deprive U.S. Steel
and other domestic producers of the benefits of the
Section 232 tariffs." Case 20-3825, ECF 22, at 6; Case
20-3869, ECF 32, at 6 (same). Such economic interests,
however, do not establish a "legally protectable inter-
est" under Rule 24. *See Wolfsen*, 695 F.3d at 1315
("mere[] economic interests will not suffice").

The Pipe Producers, in contrast, analogize these
cases to antidumping or countervailing duty proceed-
ings because Commerce's exclusion procedure is "an
adversarial administrative procedure through which
interested parties in the United States could request
and object to product-specific exclusions from Section
232 tariffs." Case 20-3869, ECF 30, at 6. "Like anti-
dumping and countervailing duty proceedings, and
unlike the Proclamation at issue in *PrimeSource*, this
framework 'provide[s] specific rights to domestic pro-
ducers to participate in administrative proceedings
culminating in final agency action' either granting or
denying exclusions from Section 232 duties." *Id.* at 7
(brackets in original) (quoting *PrimeSource*, 494
F. Supp. 3d at 1325 (Baker, J., concurring)).

For purposes of Rule 24(a)(2)'s "protectable inter-
est" inquiry, however, Section 232 and its administra-
tive scheme, differ in at least two critical respects from
the Tariff Act of 1930, 19 U.S.C. § 1202 *et seq.*, and its

administrative scheme governing antidumping and
countervailing duties.[18] First, unlike the Tariff Act,
which confers an absolute right on domestic interested
parties to request initiation of investigations and to
participate in Commerce's and the International
Trade Commission's antidumping and countervailing
duty proceedings,[19] Section 232 itself confers no such
right to participate in agency proceedings. While Sec-
tion 232 expressly permits Commerce to hear from

---

[18] The two statutory schemes also differ in a third respect,
but this difference is relevant to Rule 24(a)'s alternative
pathway for intervention as of right, i.e., when a third
party "is given an unconditional right to intervene by fed-
eral statute." USCIT R. 24(a)(1). By statute, interested par-
ties that participate in administrative proceedings before
Commerce and the ITC in antidumping and countervailing
duty matters may intervene as of right in any ensuing liti-
gation in the CIT. *See* 28 U.S.C. § 2631(j)(1)(B). As a result,
such interested parties intervene in this Court using the
procedural mechanism of Rule 24(a)(1) rather than Rule
24(a)(2). Accordingly, the Court assumes—but does not de-
cide—that absent the existing unconditional statutory
right of intervention, interested parties that participated
in administrative proceedings in antidumping and counter-
vailing duty cases would have a protectable interest for
purposes of intervention under Rule 24(a)(2).

[19] *See, e.g.*, 19 U.S.C. §§ 1671a (initiation of countervailing
duty investigation), 1673a (initiation of antidumping duty
investigation), 1671b(b)(3) (referring to "interested party"
participation in countervailing duty investigation),
1673b(b)(2) (same as to antidumping duty investigations),
1677(9)(C) (defining an "interested party" to include "a
manufacturer, producer, or wholesaler in the United States
of a domestic like product").

domestic parties in connection with national security investigations,[20] the statute does not require Commerce to do so, nor does it impose any requirement that Commerce—much less this Court—permit outsiders to voice objections to any exclusions that the Department might grant under any administrative scheme implementing national security tariffs. *Cf. Am. Mar.*, 870 F.2d at 1562–63 (holding that statutory right of "all parties" to be heard in agency proceedings did not create a protected legal interest of such parties to litigate in what is now the Court of Federal Claims absent statutory recognition of such a right). That Commerce does so is, in effect, an act of administrative grace that creates no protected legal interests.

Second, the Tariff Act only permits narrowly defined parties—"interested parties"—to participate in antidumping and countervailing duty administrative proceedings. *See above* note 19. In contrast, Commerce's administrative scheme implementing Section 232 permits *any* domestic person or entity to voice objections to exclusion requests. For purposes of Rule 24(a)(2), any scheme such as Commerce's here that effectively permits *anyone* to participate in administrative proceedings confers a legally protectable interest

---

[20] *See* 19 U.S.C. § 1862(b)(2)(A)(iii) ("In the course of any investigation conducted under this subsection, the Secretary shall . . . if it is appropriate and after reasonable notice, hold public hearings or otherwise afford interested parties an opportunity to present information and advice relevant to such investigation.").

on no one. *Cf. Lujan v. Defs. of Wildlife*, 504 U.S. 555,
577 (1992) (stating that Congress may not "convert the
undifferentiated public interest in executive officers'
compliance with the law into an individual right vin-
dicable in the courts . . . .") (cleaned up).

In short, because Section 232 confers no statutory
right to object to any exclusions that Commerce might
grant, and because Commerce's administrative
scheme indiscriminately permits anyone to voice such
objections, the Court concludes that the Pipe Produc-
ers—the only proposed intervenors that made this ar-
gument—have no legally protectable interests for pur-
poses of Rule 24(a)(2) notwithstanding their participa-
tion in Commerce's administrative proceedings.

## B. Whether the proposed intervenors will gain or lose by the direct legal operation and effect of the judgment

Even if the proposed intervenors have legally pro-
tected interests in defending Commerce's denials of
the plaintiffs' exclusion requests, the intervenors must
also establish that they "will either gain or lose by the
*direct* legal operation and effect of the judgment.' "
*Wolfsen*, 695 F.3d at 1315 (quoting *Am. Mar.*, 870 F.2d
at 1561) (emphasis in *Am. Mar.*). They cannot satisfy
this requirement.

In two of these cases, U.S. Steel argues that it has
a "direct and immediate" interest because a ruling for
Plaintiffs "will harm U.S. Steel's ability to protect its

interest as a leading domestic market participant."
Case 20-3825, ECF 22, at 9.[21] U.S. Steel argues that it
is the party "best placed to address" evidence about "its
own ability to produce the subject products in suffi-
cient quantities and qualities, and its delivery times."
*Id.* U.S. Steel claims that if the Court orders Com-
merce to grant the requested exclusions, the result
would be to "block U.S. Steel's reinvestment in domes-
tic steel production, depress market prices, and neces-
sarily foreclose sales opportunities, [which] would neg-
atively impact U.S. Steel's production utilization." *Id.*

In the other two cases in which it seeks to inter-
vene, U.S. Steel argues that "the potential adverse im-
pact to U.S. Steel is not mere abstract 'competition,'
and would occur by 'the *direct* legal operation and ef-
fect of the judgment' upon the tariff treatment of the
products at issue." Case 21-15, ECF 12, at 7 (emphasis
in original) (quoting *Am. Mar.*, 870 F.2d at 1561).[22]
U.S. Steel emphasizes its argument that it "was capa-
ble of producing and selling slab substantially similar
to that which [Plaintiffs] sought to import tariff-free
. . . ." *Id.* at 8. Electralloy, Crucible, and Ellwood copy
this argument essentially verbatim. Case 21-27,
ECF 9, at 6; Case 21-93, ECF 10, at 10–11, ECF 13,
at 10, and ECF 16, at 10–11.

---

[21] U.S. Steel's argument in Case 20-3869 is identical.
ECF 32, at 9.

[22] U.S. Steel's argument in Case 21-5 is identical. ECF 9,
at 7.

Finally, the Pipe Producers argue that their inter-
ests are "direct and immediate" because "the product
exclusion determinations at issue in this appeal relate
to specific sales and projects. The purpose of Proposed
Defendant-Intervenors' objections was to produce and
sell line pipe for those specific projects. Their ability to
do so turned directly on Commerce's decision to grant
or deny Plaintiff's requests." Case 20-3869, ECF 30,
at 8 (citation omitted). The Pipe Producers therefore
conclude that their interests "include specific transac-
tions that '[a]ny relief granted by this Court will . . .
operate directly and immediately' to affect." *Id*. at 8–9
(alterations in original) (quoting *PrimeSource*, 494
F. Supp. 3d at 1326 (Baker, J., concurring)).

The problem with the proposed intervenors' argu-
ments is that upholding Commerce's exclusions will
not provide the intervenors with sales opportunities,
because that ship has sailed. Plaintiff North American
Interpipe explains the issue well in responding to U.S.
Steel's allegations about foreclosed "sale opportuni-
ties":

> However, despite denial of the exclusion re-
> quests, U.S. Steel did not subsequently supply
> the products at issue to [North American Inter-
> pipe]. Thus, the grant or denial of the exclusion
> requests that are at issue in this appeal will
> have no particularized impact on U.S. Steel. In
> reality, the only "interest" identified by U.S.
> Steel in this matter is the indirect economic ben-
> efit U.S. Steel believes it would receive by

ensuring that [North American Interpipe] is in-
jured by unfair tariff treatment.

Case 20-3825, ECF 23, at 7. The other plaintiffs make
the same point.[23]

Because the steel in question has long since been
imported and used, whether the Court affirms or over-
turns Commerce's exclusion denials can make no dif-
ference to the proposed intervenors. Moreover, the re-
sult here would be the same even *if*, hypothetically, the
imports in question were suspended and gathering
dust in port warehouses pending the outcome of this
litigation. In that counterfactual scenario, there would
still be no certainty that if Plaintiffs lost they would
ship back their imports (if such a thing were even

---

[23] *See* Case 21-27, ECF 19, at 9 ("Valbruna was unable to,
and therefore did not, purchase any of these products from
[objector] Electralloy, but instead was forced to pay the 25
percent Section 232 tariffs in order to continue to supply
its operations in Fort Wayne."); Case 21-5, ECF 21, at 4
("[T]he litigation involves entries that are now almost two
years old and have long ago been used or shipped."); Case
21-93, ECF 27, at 8 (similar); Case 20-3869, ECF 25, at 8
("If this Court were to grant the relief sought by Evraz, and
were Commerce to retroactively grant Evraz's requests for
duty exclusions, this would merely result in a refund of Sec-
tion 232 duties improperly paid on imports already made.
In other words, the relief Evraz seeks could not deprive
U.S. Steel of any theoretical sales opportunities and there-
fore could not positively impact U.S. Steel's capacity utili-
zation rate."); Case 21-15, ECF 18 at 5 (noting the slabs in
question have been imported and the duties paid).

commercially feasible) and instead purchase from the
proposed intervenors.

Thus, even if the imports could be rescinded if the
government were to prevail and the world could be re-
stored to the *status quo ante*, the proposed intervenors
would still not "gain . . . by the *direct* legal operation
and effect of the judgment," *Wolfsen*, 695 F.3d at 1315
(quoting *Am. Mar.*, 870 F.2d at 1561) (emphasis in *Am.
Mar.*). Any such gain would instead be both indirect
and contingent, resulting not from the direct effect of
the judgment, but instead from Plaintiffs' choice to
purchase from the proposed intervenors rather than
completing the imports. *Cf. Am. Mar.*, 870 F.2d
at 1561 (observing that a putative intervenor's "inter-
est is indirect, because no consequence to it flows di-
rectly from a Claims Court ruling, and contingent be-
cause of the uncertainty that other events will actually
follow, causing [the putative intervenor] to suffer any
harm").

In any event, given that the imports in question
were completed long ago with the accompanying pay-
ment of duties, the only possible "gain" that the pro-
posed intervenors can possibly obtain here is seeing
economic harm inflicted on the plaintiffs as actual or
potential competitors. The proposed intervenors, how-
ever, do not expressly claim to be competitors with the
plaintiffs—rather, they claim that they can supply the
products imported by the plaintiffs. But even if the
proposed intervenors and the plaintiffs do compete,

any competitive benefit—if it can be called that[24]—to the former resulting from the latter losing here would be both indirect and contingent. *See id.*

## C. Adequacy of government representation

The final element of the test for intervention as of right under Rule 24(a)(2) is whether the movant has demonstrated that its interest will not be adequately represented by the government. That requires "a compelling showing that [the movant's] interests may not be adequately protected by the government insofar as there are aspects of the case that the government might not—or might not be able to—pursue to their fullest" and overcoming "the presumption that the government as sovereign adequately represents the interest of citizens concerning matters that invoke 'sovereign interests.' " *PrimeSource*, 494 F. Supp. 3d at 1326 (Baker, J., concurring) (quoting *Wolfsen*, 695 F.3d at 1316).

One way to overcome the presumption is to seek different relief than the government, as then the proposed intervenor's "specific litigation goals" would not

---

[24] The Court need not resolve the question, but it doubts that inflicting retrospective harm that amounts to retaliation—as opposed to prospectively raising the prices of a competitor's products—is a cognizable "competitive benefit" for purposes of Rule 24(a)(2).

"identically match those of an existing party."[25]
*Wolfsen*, 695 F.3d at 1318. For example, opposing a
settlement agreed to by the government would surely
constitute a divergence in litigation goals. To that end,
the proposed intervenors express alarm that the gov-
ernment might settle these cases, and intimate that
they would oppose settlement. *See, e.g.*, Case 20-3825,
ECF 22, at 11–12. "But these concerns [regarding po-
tential settlement] are at this point speculative and
cannot justify intervention unless and until there is
such a settlement." *Wolfsen*, 695 F.3d at 1318.

As the proposed intervenors here seek (so far) the
same relief as the government, their "entry into [these]
case[s] is presumptively barred" unless they "demon-
strate that [their] participation could add some mate-
rial aspect beyond what is already present." *Id.*

The proposed intervenors make no such showing
here. Instead they assert that the government's sover-
eign interest in maintaining the Section 232 exclusion
process does not encompass their proprietary interests
in these specific transactions. *See, e.g.*, Case 20-3869,
ECF 30, at 10 (Pipe Producers arguing that they "are
seeking to protect a more 'parochial' financial interest
not shared by other citizens" and that "there is no

---

[25] Of course, overcoming the presumption by seeking differ-
ent relief than the government would be at the price of in-
curring the burden of demonstrating independent constitu-
tional standing. *See PrimeSource*, 494 F. Supp. 3d at 1319–
20 (Baker, J., concurring).

reason to believe that [the government] has any spe-
cific interest in defending the line pipe product exclu-
sion determinations *in particular*" (emphasis in origi-
nal) (quoting, for the "parochial interest," *United
States v. Union Elec. Co.*, 64 F.3d 1152, 1170 (8th Cir.
1995)); Case 21-93, ECF 16, at 15 (Ellwood arguing
that "the government may be content to litigate this
matter with an objective of protecting the broader Sec-
tion 232 process while granting the particular exclu-
sions at issue to make this case go away"). *Wolfsen*,
however, requires the Court to presume that the gov-
ernment's sovereign interests and the proposed inter-
venors' private interests are coincident. *See* 695 F.3d
at 1317.[26]

Finally, several proposed intervenors claim that
they can make "factual contributions" that will cure
"imperfect administrative records."[27] The Court

---

[26] Insofar as the proposed intervenors rely on *Vivitar Corp.
v. United States*, 585 F. Supp. 1415 (CIT 1984), for the
proposition that private commercial interests are not ade-
quately represented by the government, *Vivitar* is no
longer persuasive in light of *Wolfsen*. *See PrimeSource*,
494 F. Supp. 3d at 1327 (Baker, J., concurring).

[27] *See, e.g.*, Case 20-3825, ECF 22, at 12–13 ("Finally, as
Section 1581(i) cases lack an administrative record until
the record is created through the government's answer and
potential discovery, . . . U.S. Steel's factual contributions
concerning its production capacity will bolster its existing,
truthful submissions to the administrative record."); Case
21-5, ECF 9, at 10 ("Finally, as Section 1581(i) cases lack
an administrative record until the record is created

disagrees because, as Plaintiffs and the government
point out, judicial review is confined to the existing ad-
ministrative records in these matters. *See JSW Steel
(USA) Inc. v. United States*, 466 F. Supp. 3d 1320, 1328
(CIT 2020) (stating that in APA cases, "judicial review
is generally limited to the full administrative record
before the agency at the time it rendered its decision"
and explaining that the rationale behind this rule is
"to guard against courts using new evidence to convert
the arbitrary and capricious standard into effectively
de novo review" (cleaned up) (citing, for the rationale,
*Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d
1374, 1380 (Fed. Cir. 2009))); *Giorgio Foods, Inc. v.
United States*, 755 F. Supp. 2d 1342, 1346 (CIT 2011)
("In an administrative review case, it is rare that a fed-
eral court will consider information outside of the rec-
ord submitted."). Because the administrative records
are closed, the proposed intervenors' "factual contribu-
tions" would not "add some material aspect to the case
beyond what is already present." *Wolfsen*, 695 F.3d at
1318.

* * *

---

through the government's answer and potential discovery,
. . . U.S. Steel's interests may be impaired or impeded by
imperfect administrative records . . . ."); Case 21-27, ECF 9,
at 8 (Electralloy, same argument as U.S. Steel in Case
21-5); Case 21-93, ECF 10, 13, and 16, all at 13 (Electralloy,
Crucible, and Ellwood, same argument as U.S. Steel in
Case 21-5).

In sum, while the proposed intervenors' motions are timely, they fail to satisfy the other three elements of the Federal Circuit's test for intervention as of right under Rule 24(a)(2). The proposed intervenors lack any legally protectable interest; any interest that they do have is insufficiently direct and immediate; and they have not demonstrated that the government will not adequately protect whatever interest they have.

## III. Permissive intervention under Rule 24(b)(1)

As an alternative to intervention as of right, the proposed intervenors seek leave to intervene under Rule 24(b)(1), which provides as follows:

> (1) *In General*. On timely motion, the court may permit anyone to intervene who:
>
>> (A) is given a conditional right to intervene by a federal statute; or
>>
>> (B) has a claim or defense that shares with the main action a common question of law or fact.

USCIT R. 24(b)(1).

Thus, Rule 24(b)(1) provides two pathways for permissive intervention. *If* a proposed intervenor is otherwise eligible to intervene under either pathway, in the exercise of its discretion the Court then "must consider whether the intervention will unduly delay or

prejudice the adjudication of the original parties' rights." USCIT R. 24(b)(3).

## A. Conditional right to intervene by statute (Rule 24(b)(1)(A))

Two of the proposed intervenors invoke the first pathway in Rule 24(b)(1)(A), that is, pursuant to statute. U.S. Steel does so in Cases 20-3825 and 20-3869, and the Pipe Producers do so in Case 20-3869.[28] In contending that a federal statute gives them a "conditional right to intervene" for purposes of the rule, U.S. Steel and the Pipe Producers cite 28 U.S.C. § 2631(j)(1), which provides that "any person who would be adversely affected or aggrieved by a decision in a civil action" pending in the CIT "may, by leave of court, intervene in such action." 28 U.S.C. § 2631(j)(1).[29]

---

[28] Case 20-3825, ECF 22, at 14 (U.S. Steel referring to Rule 24(b)(1)(A)); Case 20-3869, ECF 32, at 14 (U.S. Steel, same); Case 20-3869, ECF 17, at 5–6 (Pipe Producers discussing "conditional right to intervene by federal statute").

[29] In Cases 21-5 (U.S. Steel), 21-15 (U.S. Steel), 21-27 (Electralloy), and 21-93 (Electralloy, Crucible, and Ellwood), the proposed intervenors do not invoke Rule 24(b)(1)(A), and only mention the intervention statute (28 U.S.C. § 2631(j)(1)) in passing in connection with the "shared defense" pathway under Rule 24(b)(1)(B). Accordingly, by not expressly invoking Rule 24(b)(1)(A) and failing to develop any reasoned argument as to why they are eligible to intervene under 28 U.S.C. § 2631(j)(1), these proposed

## 1. Constitutional standing

To be "adversely affected or aggrieved by" a decision of the CIT for purposes of permissive intervention under 28 U.S.C. § 2631(j)(1), a proposed intervenor must demonstrate independent constitutional standing. *See PrimeSource*, 494 F. Supp. 3d at 1328–29 (Baker, J., concurring) (citing *Rohm & Haas Co. v. U.S. Int'l Trade Comm'n*, 554 F.2d 462, 463 (CCPA 1977)). That is, a proposed intervenor seeking permissive intervention pursuant to 28 U.S.C. § 2631(j)(1) must demonstrate that (1) it is threatened with injury in fact (2) from a decision of the court (3) that is redressable by a ruling in favor of the party on whose side the proposed intervenor seeks to intervene. *Cf. Mojave Desert Holdings, LLC v. Crocs, Inc.*, 987 F.3d 1070, 1078 (Fed. Cir. 2021) ("[T]he irreducible constitutional minimum of standing contains three elements: injury in fact, causation, and redressability.") (cleaned up).

Both U.S. Steel (in Cases 20-3825 and 20-3869) and the Pipe Producers assert that they will suffer injury if the Court orders the government to refund the Section 232 duties to the plaintiffs. U.S. Steel's supplemental brief in both cases asserts the following facts:

U.S. Steel produces and sells products substantially the same or identical to those that

---

intervenors have waived any argument that they are eligible for permissive intervention by statute.

Plaintiffs sought to exclude. Thus, Plaintiff's requests to exclude these products from remedial Section 232 tariffs are adverse to U.S. Steel's economic interests. U.S. Steel has a private interest in rejection thereof.

As detailed [above], granting Plaintiff's requests would depress market prices for slab and downstream products, and foreclose sales to purchasers of imports or derivatives, thus harming U.S. Steel.

Case 20-3825, ECF 22, at 14–15; Case 20-3869, ECF 32, at 15 (same).[30]

The Pipe Producers, for their part, assert in their supplemental brief that they would suffer "lower prices and lost sales as a result of greater import competition" if "Commerce's line pipe product exclusion determinations were nullified." Case 20-3869, ECF 30, at 14.

Neither U.S. Steel nor the Pipe Producers, however, have submitted any evidentiary materials establishing these facts asserted by counsel.[31] Nor have

---

[30] U.S. Steel's briefs contain no further "detail[]" regarding these asserted injuries, notwithstanding the prefatory "[a]s detailed [above]" characterization.

[31] "Briefs," of course, "are arguments, not evidence." *Morgenstern v. Burton*, 86 F.2d 341, 342 (CCPA 1936); *see also Estee Lauder Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 595 (Fed.

they even alleged these asserted facts in their prof-
fered answers.[32]

A party with the burden of establishing independ-
ent constitutional standing must do so "in the same
way as any other matter on which the [party] bears the
burden of proof, *i.e.*, with the manner and degree of
evidence required at the successive stages of the liti-
gation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561
(1992). Thus, "[a]t the pleading stage, general factual
allegations of injury resulting from the defendant's
conduct may suffice . . . ." *Id*. But at the summary judg-
ment stage, "the plaintiff can no longer rest on such
mere allegations, but must set forth by affidavit or
other evidence specific facts . . . ." *Id*. (cleaned up). And
in the final stage, "those facts (if controverted) must be
supported adequately by the evidence adduced at
trial." *Id*. (cleaned up).

In this context of permissive intervention pursuant
to Rule 24(b)(1)(A) and 28 U.S.C. § 2631(j)(1), it is un-
clear what "manner and degree of evidence" is re-
quired from a proposed intervenor with the burden of
establishing its independent constitutional standing.
Nevertheless, at the very minimum, it must be that a
proposed intervenor invoking Rule 24(b)(1)(A) and
28 U.S.C. § 2631(j)(1) to join a lawsuit—like a plaintiff

Cir. 1997) ("[A]rguments of counsel cannot take the place
of evidence lacking in the record.").

[32] *See* Case 20-3825, ECF 16 (U.S. Steel); Case 20-3869,
ECF 11 (U.S. Steel) and ECF 24 (Pipe Producers).

commencing a lawsuit—has the burden of proffering a pleading with factual allegations establishing standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ("Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element [of standing]." (cleaned up)). Here, neither the Pipe Producers nor U.S. Steel have alleged facts establishing standing in their proposed answers, which (in the absence of any evidentiary materials establishing their standing) defeats their invocation of Rule 24(b)(1)(A) and 28 U.S.C. § 2631(j)(1).

But even if the factual assertions by counsel in U.S. Steel's and the Pipe Producers' motions in Cases 20-3825 and 20-3869 could suffice in the absence of evidentiary submissions or factual allegations of standing in their proposed answers, the Court concludes that these entities lack constitutional standing.

Insofar as U.S. Steel and the Pipe Producers assert (through counsel) that they are injured by not making sales *to the plaintiffs*, that harm is no longer redressable. As discussed above, both North American Interpipe and Evraz completed the imports in question and paid the relevant duties. Case 20-3825, ECF 23, at 14–15 ("U.S. Steel never actually supplied the required steel inputs, and [North American Interpipe] was forced to pay the 25 percent duties in order to import the steel necessary to maintain its operations . . . ."); Case 20-3869, ECF 33, at 8 (Evraz, same argument as to Pipe Producers). That bell cannot be unrung, and

there are no sales opportunities to gain if the Court
sustains Commerce's exclusions.

Even if that bell could be unrung, there is no certainty that North American Interpipe and Evraz would purchase the products in question from U.S. Steel and the Pipe Producers (rather than proceed with the imports anyway). That uncertainty means that the causation element of standing is also lacking here. *Cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) ("We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors."); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42–43 (1976) (holding that plaintiffs lacked standing when it was "purely speculative whether the denials of service specified in the complaint fairly [could] be traced" to the challenged regulation or "instead result[ed] from decisions made by" the third parties and that it was "equally speculative" whether the plaintiffs' desired injunction would result in them receiving service).

Nor do U.S. Steel's and the Pipe Producers' factual assertions through counsel (if taken as true) establish that they will suffer cognizable competitive injury if the Court orders the government to refund Plaintiffs North American Interpipe and Evraz their duties. To begin with, U.S. Steel and the Pipe Producers do not assert that they *compete* with North American Interpipe and Evraz as to domestic sales of the imports in question (or otherwise). That alone is reason to find

that their counsel have not sufficiently asserted facts
that, if taken as true, establish standing.

In any event, on this record, U.S. Steel and the Pipe
Producers do not compete with North American Inter-
pipe and Evraz as to the specific products that are the
subject of the exclusion requests at issue. The facts are
somewhat different in each case, so the Court ad-
dresses them separately.

Although North American Interpipe—which al-
leges that it is an importer and distributor—appar-
ently resells on the domestic market the steel pipe it
imports, the import transactions in question have been
completed. Insofar as North American Interpipe and
U.S. Steel compete in the domestic market as to such
products (notwithstanding the lack of any factual as-
sertion to that effect by U.S. Steel), such competition
presumably has *already* occurred. Any decision by the
Court requiring the government to refund North
American Interpipe's duties would not have "a natural
price-lowering . . . effect on [U.S. Steel's past] sales
(compared to what prices . . . would be in the absence
of [such ruling]), . . . by directly lowering . . . prices for
[North American Interpipe's] competing goods." *AVX
Corp. v. Presidio Components, Inc.*, 923 F.3d 1357,
1364 (Fed. Cir. 2019). The Court's decision therefore
would not cause any injury to U.S. Steel even if it and
North American Interpipe are direct competitors in

the domestic market for the steel pipe products that the latter imports.[33]

And insofar as U.S. Steel were to claim that it would suffer "competitive injury" if North American Interpipe obtains its duty refunds because the two companies compete generally as to products other than the transaction-specific steel pipe products at issue in the latter's exclusion request, such competitive injury is not cognizable because it is insufficiently "particularized and [ ] concrete." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 99 (2013). In *Already*, a footwear manufacturer contended that it had standing to challenge the validity of a competitor's trademark—even though the competitor, Nike, had covenanted not to sue for infringement of the mark—because both companies "compete[d] in the athletic footwear market." *Id*. The Supreme Court easily rejected this "boundless theory of standing" that "a market participant is injured for Article III purposes whenever a competitor benefits from something allegedly unlawful." *Id*. *Already* forecloses standing on the part of U.S. Steel to

---

[33] In *PrimeSource*, by contrast, the plaintiffs sought prospective injunctive relief invalidating Section 232 national security tariffs on steel derivative imports. *See* 494 F. Supp. 3d at 1311–12 (discussing entry of consented preliminary injunctions against collection of duties). Had the Court granted such relief, it would have had a natural price-lowering effect on prices prospectively charged by the plaintiffs and thus inflicted competitive injury on the proposed intervenors that sold competing steel derivative products.

defend Commerce's exclusion denials here on the theory that U.S. Steel and North American Interpipe compete outside of the context of the specific import transactions at issue in this case.

*Already* similarly forecloses standing on the part of proposed intervenors U.S. Steel and the Pipe Producers in Case 20-3869 brought by Evraz. Unlike North American Interpipe in Case 20-3825, Evraz is not a distributor—it is a *manufacturer*, and it used the imported steel in question for its manufacturing. Case 20-3869, ECF 25, at 2 (referring to Evraz as "a U.S. producer of steel pipe products"). Thus, any competition between U.S. Steel and the Pipe Producers on the one hand and Evraz on the other does not involve the specific products for which the latter sought an exclusion—rather, it involves *manufactured* products that are necessarily different from the steel inputs that are the subject of Evraz's exclusion requests. Just because Evraz would benefit from duty refunds does not give standing to U.S. Steel and the Pipe Producers to challenge those refunds, any more than U.S. Steel and Pipe Producers would be injured for standing purposes by an IRS tax refund to Evraz that would improve its financial bottom line.

## 2. Prudential Standing

A proposed intervenor invoking permissive intervention under 28 U.S.C. § 2631(j)(1) must also demonstrate prudential standing. *See PrimeSource*, 494 F. Supp. 3d at 1330 n.34 (Baker, J., concurring) (citing

*Bennett v. Spear*, 520 U.S. 154, 163 (1997)). But even if the statute does not require consideration of a proposed intervenor's prudential standing, it invests the court with discretion to do so. *Id.*

One aspect of prudential standing is third-party standing. *See id.* at 1330–31 (Baker, J., concurring). This principle "limits access to the federal courts to those litigants best suited to assert a particular claim." *Id.* at 1330 (cleaned up and quoting *Starr Int'l Co., Inc. v. United States*, 856 F.3d 953, 965 (Fed. Cir. 2017)). Assuming a litigant (or, as here, putative litigant) has constitutional standing, i.e., injury in fact, a court may nonetheless deny standing if the litigant seeks to vindicate not its own legal right or interest, but instead the "legal rights or interests of [a] third part[y]." *Id.*

Here, U.S. Steel (in Cases 20-3825 and 20-3869) and the Pipe Producers (in Case 20-3869) seek to defend Commerce's denial of Plaintiffs' exclusion requests, which is a sovereign interest of the government. To have third-party standing to defend the government's sovereign interests, U.S. Steel and the Pipe Producers would have to "demonstrate a close relationship with the person who possesses the right, i.e., the government, and a hindrance to the government's ability to protect its own interests." *Id.* at 1331 (cleaned up). Neither U.S. Steel nor the Pipe Producers make any attempt to satisfy these requirements.

Instead, both U.S. Steel and the Pipe Producers argue in effect that they have first-party standing

because Commerce's interim rule allowed them to object to Plaintiffs' exclusion requests. Case 20-3825, ECF 22, at 16–18 (U.S. Steel); Case 20-3869, ECF 32, at 17–18 (U.S. Steel), and ECF 30, at 14–15 (Pipe Producers). According to U.S. Steel and the Pipe Producers, Commerce's interim final rule conferred upon them a legally protected interest for standing purposes, and thus they need not satisfy the requirements of third-party standing.

Although Congress "has the power to create new interests, the invasion of which may confer standing," *Diamond v. Charles*, 476 U.S. 54, 65 n.17 (1986) (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41 n.22 (1976)), Section 232 confers no rights upon third parties to participate in administrative proceedings involving exclusion requests, much less for such third parties to initiate or participate in subsequent court challenges to the results of those proceedings. That alone defeats any argument that U.S. Steel and the Pipe Producers have any cognizable legal interest here for first-party standing purposes. And while Commerce's interim final rule permits anyone to *voice* objections to exclusion requests, that is as far as it goes. It hardly creates—even assuming the Department could do so unilaterally, absent statutory authori-

zation—any cognizable interest in either defending or
challenging the results of those proceedings.[34]

\* \* \*

With the exception of U.S. Steel (in Cases 20-3825
and -3869) and the Pipe Producers, the proposed inter-
venors have waived any claim to permissive interven-
tion pursuant to Rule 24(b)(1)(A) and 28 U.S.C.
§ 2631(j)(1). Although U.S. Steel (in those two cases)
and the Pipe Producers expressly seek intervention on
this basis, they have not demonstrated constitutional
standing and therefore are not "adversely affected or
aggrieved" as required by 28 U.S.C. § 2631(j)(1). Fi-
nally, even if U.S. Steel and the Pipe Producers have
constitutional standing, they lack third-party stand-
ing and thus prudential standing, which 28 U.S.C.
§ 2631(j)(1) also requires or at least allows the Court
in its discretion to consider.

## B. Permissive intervention based on a shared defense (Rule 24(b)(1)(B))

The second pathway of Rule 24(b)(1) allows permis-
sive intervention if the putative intervenor "has a

---

[34] U.S. Steel's and the Pipe Producers' argument that they
have a legally protected interest in defending Commerce's
exclusion denials is a two-way street; if their interest is suf-
ficiently cognizable to allow them to defend such denials,
then they would also necessarily have a cognizable interest
in challenging any exclusions granted by the Department
over their objections.

claim or defense that shares with the main action a common question of law or fact." USCIT R. 24(b)(1)(B). As used in Federal Rule of Civil Procedure 24(b)(1)(B), and therefore by extension in this Court's counterpart, the "words 'claim[] or defense[]' . . . 'manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law suit.' " *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 n.18 (1997) (quoting *Diamond v. Charles*, 476 U.S. 54, 76–77 (1986) (O'Connor, J., concurring in part and concurring in judgment)).

In other words, "claim or defense" in Rule 24(b)(1)(B) must be read in tandem with "claim" in Rule 8(a)(2) and "defense" in Rule 8(c)(1)(A).[35] *PrimeSource*, 494 F. Supp. 3d at 1333 (Baker, J., concurring); *cf. Amchem*, 521 U.S. at 623 n.18 (reading "claims or defenses" in Federal Rule of Civil Procedure 23(a)(3) (governing commonality for class certification) in tandem with "claim or defense" in Federal Rule of Civil Procedure 24(b) (governing permissive intervention)); *United Keetoowah Band of Cherokee Indians of Okla. v. United States*, 480 F.3d 1318, 1324 (Fed. Cir. 2007) (reading the "interest" requirement in Court of Federal Claims Rule 19(a)(2) (governing joinder of

---

[35] "A pleading that states a claim for relief must contain: . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." USCIT R. 8(a)(2). "In responding to a pleading, a party must: (A) state in short and plain terms its defenses to each claim *asserted against it* . . . ." USCIT R. 8(c)(1)(A) (emphasis added).

persons required to be joined) as having the same
meaning as the "interest" requirement in Court of Fed-
eral Claims Rule 24(a)(2) (governing intervention of
right based on a claimed "interest relating to the prop-
erty or transaction that is the subject of the action")).

Plaintiffs seek APA relief against the government
for its collection of Section 232 duties. Here, the pro-
posed intervenors share no "defense" with the govern-
ment for purposes of Rule 24(b)(1)(B), because the an-
tecedent requirement for a Rule 8(c)(1)(A) "defense" is
a Rule 8(a)(2) "claim asserted *against* [the litigant]"
proffering the defense. USCIT R. 8(c)(1)(A) (emphasis
added).[36] The only Rule 8(a)(2) "claim" that Plaintiffs
have here—or can conceivably have—is against the
government.

Plaintiffs do not seek—and, more importantly, *can-
not* seek—any relief against the proposed intervenors.
As Plaintiff California Steel aptly explains, the ques-
tion for this Court is whether Commerce—not the

---

[36] Rule 24(b)(1)(B) properly understood "is a mechanism for
consolidating in a single action claims or defenses that
might otherwise be litigated separately." *PrimeSource*, 494
F. Supp. 3d at 1334 n.37 (Baker, J., concurring) (quoting
Nelson, 106 Va. L. Rev. at 386). As such, it "offers a stream-
lined mechanism for an outside party to join pending liti-
gation rather than filing a separate lawsuit and seeking
consolidation." *Id.* (quoting Nelson, 106 Va. L. Rev. at 386
n.572). It is assuredly not an open invitation for an outsider
to inject itself as a defendant into litigation simply because
it wants the plaintiff to lose.

proposed intervenors—violated the APA when it denied the exclusion requests, and "[o]n that score, [an intervenor] is simply a bystander." Case 21-15, ECF 18, at 2.

Put differently, how could Plaintiffs possibly sue domestic steel manufacturers for refunds of tariffs paid to the government? Obviously, they cannot. They therefore "have no cognizable 'claim' against [Proposed Defendant-Intervenors] within the meaning of the Federal Rules of Civil Procedure and our rules." *PrimeSource*, 494 F. Supp. 3d at 1333–34 (Baker, J., concurring). It would be nonsensical (if not sanctionable) for Plaintiffs to attempt to sue the proposed intervenors in addition to the government, which means it is equally nonsensical for the proposed intervenors to claim a "shared defense" with the government. Therefore, for precisely the same reason that Plaintiffs could "seek no relief against the [proposed intervenors], in this suit or any other, the [proposed intervenors have] no 'defense' within the meaning of our Rules 8(c)(1)(A) and 24(b)(1)(B)." *Id.* (footnote omitted). The proposed intervenors are thus ineligible for permissive intervention under Rule 24(b)(1)(B). *See Diamond*, 476 U.S. at 76–77 (1986) (O'Connor, J., concurring in part and concurring in judgment) (observing that a physician was ineligible to permissively intervene to defend a state abortion law because plaintiffs lacked any cognizable claim against him); *DeOtte v. Azar*, 332 F.R.D. 173, 186 (N.D. Tex. 2019) (denying Nevada leave to permissively intervene in litigation challenging the

Affordable Care Act because plaintiffs lacked any cognizable claim against that state).

### C. Delay or prejudice

*If* a putative intervenor seeking permissive intervention is otherwise eligible for permissive intervention under either of Rule 24(b)'s pathways, the Court then "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." USCIT R. 24(b)(3). Because the proposed intervenors are ineligible for (or waived any claim to) permissive intervention pursuant to statute, *see* USCIT R. 24(b)(1)(A), and because none of them are eligible for permissive intervention based on a shared defense, *see* USCIT R. 24(b)(1)(B), the Court need not, and therefore declines to, consider the applicable discretionary factors of delay and prejudice.

### Conclusion

For all the foregoing reasons, the Court will issue a separate order denying the various motions to intervene. *See* USCIT R. 58(a).

Dated:  May 25, 2021            */s/ M. Miller Baker*
        New York, NY            M. Miller Baker, Judge