UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| ALLEGHENY TECHNOLOGIES INCORPORATED and ALLEGHENY & TSINGSHAN STAINLESS, LLC,<br><br>Plaintiffs,<br><br>– against –<br><br>UNITED STATES,<br><br>Defendant. | Court No. 20-03923 |
| CALIFORNIA STEEL INDUSTRIES, INC.<br><br>Plaintiff,<br><br>– against –<br><br>UNITED STATES,<br><br>Defendant. | Court No. 21-00015 |

**Plaintiffs' Memorandum of Law in Response to Defendant's Motion for Voluntary Remand**

Sanford Litvack
Andrew L. Poplinger
R. Matthew Burke
Rebecca Meyer
**CHAFFETZ LINDSEY LLP**
1700 Broadway, 33rd Floor
New York, NY 10019
Tel. (212) 257-6960
Fax. (212) 257-6950
s.litvack@chaffetzlindsey.com
a.poplinger@chaffetzlindsey.com

*Counsel for Plaintiffs Allegheny
Technologies Incorporated and
Allegheny & Tsingshan
Stainless, LLC  and California
Steel Industries, Inc.*

# Table of Contents

Page

I.   PRELIMINARY STATEMENT ......................................................... 1

II.  BACKGROUND ................................................................................. 8

   A.   Procedural History ...................................................................... 8

     1. The ATI action ......................................................................... 8

     2. The CSI action ......................................................................... 9

   B.   The Government's Newly Minted "Liquidation" Defense ........... 12

   C.   The Remand Motions in Context ................................................ 14

     1. The Government's Remand Motions ...................................... 14

     2. The Inspector General and the Government
       Accountability Office Reports ................................................ 18

     3. Commerce's inability to provide the complete
       administrative record ............................................................ 22

     4. The Department's *ex parte* communications with the
       Objectors concerning Plaintiffs' Requests ............................ 25

III. ARGUMENT ................................................................................... 26

   A.   The Government's Liquidation Argument Presents a
      Threshold Issue that Should Be Resolved First ........................ 26

   B.   The Scope of the Department's Request Is Not
      "Appropriate" ............................................................................. 28

     1. Commerce must ensure that the new reviews are actually
       independent and impartial .................................................... 29

     2. Commerce's ability to consider "any other information" on
       remand should be narrowly circumscribed ........................... 30

3.  The protracted timeframe proposed for re-reviewing CSI's
    Requests is unconscionable .......................................................31

4.  Commerce must offer CSI a procedure for addressing
    purported HTSUS designation errors .......................................33

**IV. CONCLUSION** .................................................................................**35**

## Table of Authorities

Page(s)

**Cases**

*Evraz Inc. NA v. United States*,
  Order, ECF No. 62, 20-cv-03869 (Ct. Int'l Trade 2020) ..................... 34

*J. Conrad LTD v. United States*,
  457 F. Supp. 3d 1365 (Ct. Int'l Trade 2020) ....................................... 27

*JSW Steel (USA) Inc. v. United States*,
  Decl. of Carol Rose, ECF No. 18, 19-cv-00133 (Ct. Int'l
  Trade 2019) .................................................................................... 23

*JSW Steel (USA) Inc. v. United States*,
  Def.'s Status Report, ECF No. 59, 19-cv-00133 (Ct. Int'l
  Trade 2019) .................................................................................... 23

*JSW Steel (USA) Inc. v. United States*,
  466 F. Supp. 3d 1320 (Ct. Int'l Trade 2020) .............................. *passim*

*NLMK Indiana LLC v. United States*,
  Decl. of Carol Rose, ECF No. 20-8, 20-cv-00050 (Ct. Int'l
  Trade 2020) .................................................................................... 23

*NLMK Indiana LLC v. United States*,
  Def.'s Status Report, ECF No. 27, 20-cv-00050 (Ct. Int'l
  Trade 2020) .................................................................................... 23

*SKF USA Inc. v. United States*,
  263 F.3d 1369 (Fed. Cir. 2001) ........................................................ 34

**Statutes**

19 U.S.C. § 1514 .................................................................................. 27

19 U.S.C. § 1516 .................................................................................. 27

28 U.S.C. § 1581 .................................................................................. 27

28 U.S.C. § 2643 ..................................................................... 27

**Other Authorities**

15 C.F.R. pt. 705, supp. 1 ....................................................... 8

83 Fed. Reg. 46,026, 46,038 .................................................... 3

CIT Rule 73.3........................................................................... 22

U.S. Dep't of Commerce, Office of Inspector General,
      *Decisions on Exclusions from Section 232 Tariffs Were*
      *Not Transparent and Based on Incomplete and Inaccurate*
      *Information*, Final Report No. OIG-21-020-A
      (Jan. 25, 2021).................................................................. 20

U.S. Gov't Accountability Office, GAO-20-517, *Steel and*
      *Aluminum Tariffs: Commerce Should Improve Its*
      *Exclusion Request Process and Economic Impact Reviews*
      (2020)............................................................... 19, 20, 21, 22

## Table of Abbreviations

| | |
|---|---|
| AK Steel | AK Steel Corporation |
| APA | Administrative Procedure Act |
| ATI | Plaintiffs Allegheny Technologies Incorporated and Allegheny & Tsingshan Stainless, LLC |
| ATI Objectors | AK Steel Corporation, North American Stainless, and Outokumpu Stainless USA Inc. |
| BIS | Bureau of Industry and Security |
| BIS Memoranda | Bureau of Industry and Security decision memoranda |
| CSI | Plaintiff California Steel Industries, Inc. |
| CSI's 2018 Requests | 170 requests for exclusion from Section 232 tariffs filed by CSI between April and July 2018 |
| CSI's 2020 Requests | 23 requests for exclusion from Section 232 tariffs filed by CSI in April 2020 |
| CSI Objectors | AK Steel Corporation, U.S. Steel Corporation, and Nucor Corporation |
| FOIA | Freedom of Information Act |
| GAO | Government Accountability Office |
| GAO Report | U.S. Gov't Accountability Office, GAO-20-517, *Steel and Aluminum Tariffs: Commerce Should Improve Its Exclusion Request Process and Economic Impact Reviews* (2020) |
| HTSUS | Harmonized Tariff Schedule of the United States |
| ITA | International Trade Administration |
| OIG Final Report | U.S. Dep't of Commerce, Office of Inspector |

|  | General, *Decisions on Exclusions from Section 232 Tariffs Were Not Transparent and Based on Incomplete and Inaccurate Information*, Final Report No. OIG-21-020-A (Jan. 25, 2021) |
| Plaintiffs | Plaintiffs Allegheny Technologies Incorporated and Allegheny & Tsingshan Stainless, LLC and Plaintiff California Steel Industries, Inc. |
| Remand Motions | Defendant's Motions for Voluntary Remand dated July 21, 2021 and July 26, 2021 |
| Supplemental Appendices | Appendices of documents reflecting *ex parte* communications regarding the ATI and CSI Plaintiffs' requests |
| U.S. Steel | U.S. Steel Corporation |

Plaintiffs Allegheny Technologies Incorporated and Allegheny & Tsingshan Stainless, LLC (collectively, "ATI") and Plaintiff California Steel Industries, Inc. ("CSI"), (jointly referred to herein as "Plaintiffs"), submit this Joint Memorandum of Law, in accordance with Court's July 28, 2021 Order, in Response to Defendant's Motions for Voluntary Remand dated July 21, 2021 and July 26, 2021, respectively (the "Remand Motions").

## I.   PRELIMINARY STATEMENT

In these lawsuits, ATI and CSI are challenging the Department of Commerce's (the "Department" or "Commerce") denial of their requests for exclusion from the Section 232 tariffs.  Despite the fact that the Department's regulation required that requests for exclusion be decided within 106 days of their submission, the Department, in fact, took more than a year to issue its decisions regarding Plaintiffs' requests.  When it finally acted, Commerce issued conclusory rulings, denying each of Plaintiffs' requests in virtually identical boilerplate decisions devoid of reasoning or analysis.

Now, years later, after ATI, CSI and others have filed suit challenging the denials and the process that led to them, the

Government acknowledges that Commerce engaged in a deeply flawed process, as a result of which Commerce cannot certify complete records regarding Plaintiffs' requests, let alone justify its unreasoned, boilerplate decisions.

The Government's solution to this serious problem is a "do over." Simply put, the Government is suggesting that Commerce should be permitted to conduct "new and independent reviews" of Plaintiffs' exclusion requests, presumably to do what it should have done more than three years ago.  But by failing to explain the history of these proceedings, the Government has obscured a critical problem with the *carte blanche* remand it seeks.  Specifically, as explained herein, a remand without parameters threatens to yield a result no different from or better than what has already occurred.

The reason is simple—these cases do not merely present a situation where the court is faced with an unreasoned decision which frustrates judicial review but can be easily remedied on remand. Instead, and what makes these cases extraordinary, and has necessitated the Government's request to try again, is that they are part of a broader pattern in which the Department conducted the entire

Section 232 exclusion process in a manner contrary to the procedures established by its own regulation.

Pursuant to its regulation, Commerce's exclusion process was supposed to be "fair, impartial and consistent[,]" 83 Fed. Reg. 46,026, 46,038, with decisions based solely on the evidence provided by Plaintiffs and any domestic steel producers that objected to Plaintiffs' requests.  But that is not what happened.  To the contrary, in denying the requests, Commerce blindly accepted the objectors' bald representations, including those made off-record, while ignoring the uncontroverted evidence.  In fact, as the Government frankly concedes, the entire process has been tinged with a large number of unexplained *ex parte* communications, many of which specifically targeted Plaintiffs and their requests.  Yet, neither Commerce nor the Department of Justice can tell the Court with certainty how many such contacts there were or what transpired in many of them.

Irregularities in the process, including, among others, the *ex parte* communications, have raised concerns with both the Department's Inspector General and the Government Accountability Office ("GAO"), each of which issued lengthy reports regarding the handling of the

Section 232 requests.  In their reports the GAO and the Inspector General specifically note, *inter alia*, that the Department, by its own admission, merely accepted unsubstantiated assertions from objectors claiming that they could and would provide requesters' products, without demanding any evidence to support the claims.

Unfortunately, as the evidence set forth herein makes clear, the Section 232 process as handled by Commerce became the mechanism through which Plaintiffs' competitors, by merely objecting, were able to effectively deprive Plaintiffs of the slabs they required to continue to compete in the market for finished steel products.

The Department's flawed process and improper denials have had significant-broad reaching consequences for ATI and CSI, both U.S. companies.  This, in turn, has had significant deleterious effects on U.S. workers, manufacturers and consumers.

In ATI's case, the joint venture that used the slabs for which exclusion was sought was forced to cease operations in 2020 due to Commerce's wrongful denials.  The denials led to the shut-down of a Pennsylvania steel plant, the loss of hundreds of jobs, hundreds of millions of dollars in revenue, and additional lost jobs and revenues in

the local communities that serviced the plant. The denials have also had broader market effects by leaving a shortage of stainless steel supply in the U.S. market that has driven up prices significantly for U.S. manufacturers and consumers.

In CSI's case, the Department's wrongful denials have been similarly devastating. CSI has been forced to reduce its workforce, and has been constantly struggling to maintain its current operations at normal levels. The denial of its requests have likewise had broader market affects. CSI has the largest steel production operation in the Western U.S. It is a critical source of carbon and alloy steel products for over 200 manufacturing clients west of the Rockies. The impact of the wrongful denials on CSI have reverberated into the communities that its facilities serve, threatening thousands of jobs in transportation, logistics and other service sectors that rely on CSI's patronage. In addition, Commerce's wrongful denials have caused the supply of carbon and alloy steel products to lag behind demand, not only costing CSI tens of millions of dollars in lost revenue, but driving up prices for businesses and consumers across the economy.

In light of the foregoing, the Government's solution of just starting over and doing now what it should have done three years ago is obviously unsatisfactory. Even if ATI and CSI are belatedly granted their exclusions, the refund of the wrongly exacted tariffs is woefully inadequate to compensate these U.S. companies for the losses unjustifiably imposed upon them by their own Government because of its obvious bias in favor of their competitors.

Given this history, while reluctantly acknowledging that a remand in some form may be ordered, Plaintiffs submit that any remand should be on terms specified by the Court to ensure that (1) Plaintiffs finally receive the full, fair, and impartial review of their requests to which they are entitled; and (2) the Court receives a complete record with reasoned decisions based upon that record, and only that record. Unfortunately, however, the Government's Remand Motions neither contain nor suggest any parameters for the remand to accomplish those critical objectives. Accordingly, as set forth in Section III.B, *infra*, Plaintiffs propose for the Court's consideration parameters that should govern any remand.

Finally, beyond the question of remand, the Government now, for the first time, has suggested that this Court lacks the jurisdiction and/or the remedial power to award Plaintiffs the ultimate relief they seek – refunds of wrongfully exacted tariffs – to the extent any entries which would have been covered by the exclusions Plaintiffs sought have liquidated. Given the passage of time, the majority of entries that would be subject to refund have liquidated and, thus, if the Government were correct much of the relief Plaintiffs are seeking would be barred. In other words, although the Government implicitly concedes that the Department's denials were problematic, in a "heads we win, tails you lose" move, the Government also claims that whether Commerce recants and grants the exclusions or not would make no difference. In short, under the Government's theory, remand would be purely an academic exercise. If that were true (and we contend it is not), everyone should know that now, not after this Court and the parties needlessly expend even further resources pursuing a futile remand.

## II.   BACKGROUND

### A. Procedural History

#### 1.  The ATI action

ATI challenges two decisions by the Department, which denied its requests for exclusion from the Section 232 tariffs for certain stainless steel slabs, a semi-finished product used to produce finished stainless steel products, such as cold-rolled coil.  Court No. 20-cv-03923, ECF No. 26-2–3.  Hereinafter, references to "ATI ECF No. __" refer to the docket in Court No. 20-cv-03923.  ATI filed these requests in April 2018.  *Id.* Three U.S. stainless steel competitors – AK Steel Corporation ("AK Steel"), North American Stainless, and Outokumpu Stainless USA Inc. (the "ATI Objectors") – each filed objections to ATI's requests claiming, without any evidence, that they had the capacity to supply the slabs Plaintiffs needed.

Although the Department's regulation provides that it will decide exclusion requests in 106 days, the Department took more than a year – until April 2019 – to deny the requests.  15 C.F.R. pt. 705, supp. 1(h)(3)(i).  When it did so, it issued perfunctory decisions devoid of any reasoning or analysis.

As a result, in December 2020 ATI commenced this action.  ATI ECF No. 2.

Pursuant to the Court's February 19, 2021 Scheduling Order, the parties agreed that ATI would file its Rule 56.1 Motion for Judgment on the Agency Record on Monday, July 12, 2021.  ATI ECF No. 20. Nevertheless, the Government waited until Friday afternoon, July 9, 2021, as ATI was finalizing its motion and brief in support, to notify ATI for the first time that it was considering seeking a voluntary remand.  Email from Meen-Gue Oh dated July 9, 2021, attached hereto as Ex. A.

Because the Government had still not made up its mind whether it really wanted a remand, and because ATI's Motion for Judgment on the Agency Record was due on July 12, 2021, the parties filed a Joint Motion to stay briefing on ATI's Rule 56.1 motion.  ATI ECF No. 32. Finally, on July 21, almost two weeks after raising the issue, the Government filed its Motion for Voluntary Remand.  ATI ECF No. 35.

### 2.  The CSI action

CSI challenges the Department's denial of 193 requests for exclusion for certain semi-finished carbon and alloy steel slabs, which it

uses as a feedstock in the production of finished carbon and alloy steel products, such as pipe and sheet.[1]  CSI filed 170 of these requests between April and July 2018 ("CSI's 2018 Requests").  Three competitors –AK Steel, U.S. Steel Corporation ("U.S. Steel"), and Nucor Corporation (the "CSI Objectors") – objected to every one of CSI's 2018 Requests.  AK Steel and U.S. Steel Corporation claimed, without any evidence, that they had the capacity and the willingness to supply the slabs CSI needed.  Nucor Corporation acknowledged that it does not make discrete slabs, but objected nonetheless, claiming that it had the finished product capacity to supply all the products that CSI makes (which would effectively shut CSI out of its own market).

As with ATI's Requests, the Department took until April 2019 to deny CSI's 2018 Requests.  Again, the Department issued perfunctory decisions devoid of any reasoning or analysis.  In addition, for at least 106 of CSI's 2018 Requests, the Department inexplicably cites CSI's alleged improper designations under the Harmonized Tariff Schedule of the United States ("HTSUS") in the exclusion requests as a basis for

---

[1] For a complete list of CSI's Requests, Plaintiffs respectfully refer the Court to Court No. 21-cv-00015, ECF No. 2 at Ex. 1.

denial, even though the Department accepted CSI's requests as
"complete" and issued a decision on the merits of these requests.

After CSI was unable to source sufficient slab from the CSI
Objectors, it filed 23 new requests in April 2020 ("CSI's 2020 Requests")
seeking exclusions for certain steel slab products.  The same
competitors objected and again, in September 2020, the Department
denied every one of CSI's 2020 Requests.

For eight requests, the Department simply issued its standard *pro
forma* denials bereft of any reasoning or analysis.

With respect to CSI's remaining fifteen 2020 Requests, Commerce
inexplicably stated that the "specifications included" in the request
were "ambiguous and/or d[id] not match those of a steel product."  *See,
e.g.*, Court No. 21-cv-00015, ECF No. 36-29 at 2.  Hereinafter,
references to "CSI ECF No. __" refer to the docket in Court No. 21-cv-
00015.  Commerce provided no further explanation for the denials,
despite the fact that (a) Commerce had months prior accepted the
requests, determining that they were "complete" within the meaning of
its regulation and (b) the CSI Objectors had specifically objected to each

request, averring that they could supply the steel products identified in the requests.

As a result, in January 2021, CSI filed its complaint.  CSI ECF No. 2.

As with ATI, on July 9, 2021, the Government informed CSI that it was considering moving for a voluntary remand.  Email from Ann C. Motto dated July 9, 2021, attached hereto as Ex. B.  The Government finally filed its Motion for Voluntary Remand in CSI's case on July 26, 2021.  CSI ECF No. 44.

## B. The Government's Newly Minted "Liquidation" Defense

In its respective July 9 communications, the Government went on to inform Plaintiffs that, in its view, even if Plaintiffs' requests were granted on remand, Plaintiffs would nevertheless be barred from the recovery they were seeking if the entries covered by their exclusion requests have been liquidated.  Ex. A; Ex. B.  This novel assertion came out of the blue, for prior to July 9, 2021 the Government had never even mentioned that it considered liquidation to be relevant to Plaintiffs' challenges to Commerce's denials of their exclusion requests.

Nonetheless, in its Remand Motions, the Government formally asserts that Plaintiffs are only entitled to relief to the extent the entries for which they seek refunds have not liquidated.  ATI ECF No. 35 at n.1 & 3; CSI ECF No. 44 at n.1.  However, the Government cites no statute or other authority to support its position.  All it does is make the naked assertion, without even acknowledging that this unprecedented proposition goes to the heart of Plaintiffs' cases and, even more importantly, to this Court's jurisdiction.

In CSI's case, every entry that would have been subject to an exclusion had any of its 170 2018 Requests been granted has liquidated. ATI believes, based upon the information currently available, that entries accounting for approximately one-third of the tariffs it seeks to recover have liquidated.  In short, the Government's position, if correct, would have a dramatic impact on the Plaintiffs and the value of pursuing these cases.  Since winning a pyrrhic victory is of no value to any company, it is critical, as explained below, to have this issue resolved at the outset.  There is no point in wasting the Court's time, the Plaintiffs' money or the Government's effort on remand if at the end of the exercise we find it was all for naught.

### C. The Remand Motions in Context

As noted earlier, in order to properly consider the Remand Motions, it is important to set forth the full context in which the remand requests arise.  For it is this context which informs the reason the Government has requested the remands and also why it is important to have specific parameters attached to any remand so as to ensure that this time around, the process works fairly and properly, as it is supposed to do.

### 1.  The Government's Remand Motions

The Government's respective Remand Motions are virtually identical.  In fact, as the Court knows, they are virtually identical to the remand motions in at least four other cases concerning challenges to the Department's wrongful denial of Section 232 exclusions.

The Government seeks a voluntary remand in an attempt to solve three problems it has identified with respect to the Department's decisions and its handling of Plaintiffs' requests.

*First*, the Government acknowledges that Commerce's boilerplate, conclusory decisions are defective since they are "similar in reasoning and scope" to those this Court found inadequate in *JSW Steel (USA)*

*Inc. v. United States*, 466 F. Supp. 3d 1320 (Ct. Int'l Trade 2020) ("*JSW Steel*").  ATI ECF No. 35 at 7; CSI ECF No. 44 at 6.

To be specific, when, in 2019, it finally acted on Plaintiffs' Requests, Commerce through the Bureau of Industry and Security ("BIS"), issued decision memoranda (the "BIS Memoranda"), which simply recited, verbatim, the same boilerplate denial language.  In each case, BIS merely stated that it was relying on the unpublished "recommendation" of another sub-agency within Commerce, the International Trade Administration ("ITA").

> In examining whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, ITA recommends finding, based on all of the evidence presented, that the product referenced in the above-captioned exclusion request is produced in the United States in a sufficient and reasonably available amount and of a satisfactory quality, and recommends denying the request for an exclusion.

> BIS accepts ITA's recommended findings as to the domestic availability of the product and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding the domestic availability.

*See, e.g.*, ATI ECF No. 26-2 at 6–7; CSI ECF No. 35-33 at 284–85.

When Plaintiffs finally saw the ITA recommendations it was clear that they too had no analysis or reasoning.  The recommendations simply regurgitated some of the points offered by the Plaintiffs and Objectors and ended up with the conclusory statement that "there is *indication* of sufficient U.S. production availability."  *See, e.g.*, ATI ECF No. 26-2 at 9 (emphasis added); CSI ECF No. 32-6 at 115 (emphasis added).

These are the decision memoranda the Government acknowledges "are similar in reasoning and scope of analysis as those reviewed in *JSW*," ATI ECF No. 35 at 7; CSI ECF No. 44 at 6, which this Court held were deficient and violated the Administrative Procedure Act ("APA"). As the Court put it in that case, "both the BIS decision memoranda and ITA recommendation memoranda do not explain what information the sub-agencies considered, how it was weighed, or why the evidence compelled denial."  *JSW Steel*, 466 F. Supp. 3d at 1330.

*Second*, the Government acknowledges that the Department engaged in *ex parte* communications with objectors during its review of Plaintiffs' requests, and that many of those communications were undocumented.  ATI ECF No. 35 at 8; CSI ECF No. 44 at 7.  In fact, the

Government is forced to concede that it cannot even locate and identify all the records of these *ex parte* communications, noting this "may" lead the Court to "conclude that the existing record[s are] incomplete."  ATI ECF No. 35 at 8; CSI ECF No. 44 at 7.

*Third*, the Government suggests that it is proposing a voluntary remand as a solution to answering all the questions concerning its *ex parte* communications with the ATI and CSI Objectors and the completeness of the administrative record Commerce has certified.  But the Government seeks to sugarcoat the seriousness of the problems that gave rise to these questions, suggesting, for example, only that the Court "may" find the records incomplete.  ATI ECF No. 35 at 8; CSI ECF No. 44 at 7.  The fact is, the Government does not know whether the record is complete or not.  How could it know when there were undocumented *ex parte* communications which could – and likely did – influence the agency?

The undue influence of the *ex parte* communications between Commerce officials and the ATI and CSI Objectors is real and substantial, and must be accounted for in setting the parameters of any remand.

### 2. The Inspector General and the Government Accountability Office Reports

Following Commerce's denial of ATI's Requests and CSI's 2018 Requests, the Department's Inspector General and the Government Accountability Office each conducted extensive reviews of Commerce's Section 232 exclusion process. These agencies identified serious irregularities and deficiencies in the process that go to the heart of the issues the Government relies upon in support of its remand motions here. And these watchdogs did not merely suggest that irregularities were a possibility, they affirmatively found that irregularities pervaded Commerce's administration of the Section 232 exclusion process.

First, as the Government acknowledges, the Inspector General raised concerns about the Section 232 exclusion process in October 2019, issuing a "Management Alert" to then-Secretary Wilbur Ross identifying irregularities in the Section 232 process, including undocumented, *ex parte* communications with objectors. ATI ECF No. 35 at 4–5; CSI ECF No. 44 at 3–4.

The Government tries to dismiss the OIG Management Alert in its Remand Motions, by claiming that "no determination was made that any agency officials acted in bad faith or without impartiality." ATI

ECF No. 35 at 4–5; CSI ECF No. 44 at 4.  But that is only half the story.
Subsequent to the issuance of the initial OIG Management Alert the
specific evidence uncovered shows, as the Government knows all too
well, that the Department not only engaged in extensive *ex parte*
communications with the ATI and CSI Objectors concerning Plaintiffs'
requests, but in numerous instances *the Department itself actually
initiated the ex parte communications.*

After the Inspector General's warning, the GAO conducted a
thorough investigation into the Department's Section 232 exclusion
process and issued a report in 2020 noting that, *inter alia*, Department
officials candidly admitted that they did not engage in reasoned
decision making and blindly deferred to objectors' unsupported
assertions.  As the GAO put it, "Commerce ***does not confirm*** whether . . .
a domestic producer [i.e., an objector] can fulfill the quantity it states it
is able to provide."  *See* U.S. Gov't Accountability Office, GAO-20-517,
*Steel and Aluminum Tariffs:  Commerce Should Improve Its Exclusion
Request Process and Economic Impact Reviews* (2020) (the "GAO
Report") at 18, *available at* https://www.gao.gov/assets/710/709387.pdf.
For an agency to simply accept one sides assertions without confirming

the facts in an adversarial setting would normally be unthinkable.  Yet

that is what occurred here.

After the GAO Report, the Department's Inspector General

published an additional report.  *See* U.S. Dep't of Commerce, Office of

Inspector General, *Decisions on Exclusions from Section 232 Tariffs*

*Were Not Transparent and Based on Incomplete and Inaccurate*

*Information*, Final Report No. OIG-21-020-A (Jan. 25, 2021) (the "OIG

Final Report"), *available at* https://www.oig.doc.gov/OIGPublications/

OIG-21-020-A.pdf.  As with the GAO Report, the Inspector General's

investigation covered exclusion requests submitted during the time

Plaintiffs' Requests were pending.  *See id.* at 3.  The investigation

included a review of ITA's process for providing the recommendations

on which BIS based its denials of exclusion requests, including

Plaintiffs' Requests.

The OIG Final Report is damning.  The Report found that the

process Commerce actually followed did not yield the information a fair-

minded decision maker needed to reach its conclusions that objectors

could supply requestors with the products for which they sought

exclusions.  More particularly the Inspector General found that, in a

large number of cases, "ITA recommended denying [requests] due to
sufficient U.S. supply even though objectors did not provide information
on plant capacity or plant utilization." *Id.* at 4.  In fact, the Department
personnel even confirmed that the ITA "*does not consider plant capacity
or percent plant utilization in its analysis, relying instead on the
objector's assertion that it can manufacture the product covered by the
[exclusion request] in a timely manner*." *Id.* at 5 (emphasis added).
Thus, the Inspector General found, "ITA made recommendations using
incomplete or contradictory information that resulted in [exclusion
request] denials even though it was unclear if the product was available
from domestic U.S. suppliers in an adequate quantity or within the
required timeframe." *Id.* at 3.

The Inspector General also found serious flaws in the
Department's documentation of its decision-making.  In particular, the
Inspector General found that "ITA did not consistently document its
rationale in cases where it determined that there was a sufficient U.S.
supply of a product." *Id.* at 8.  As a result, these actions by the agency
"result in lack of transparency in the [exclusion request] review process
since key information about [exclusion request] decisions is not

maintained or documented." *Id.*  As discussed below, in Plaintiffs'
cases, the Department does not even know whether it has identified all
documents relevant to its denial of Plaintiffs' requests.

### 3.  Commerce's inability to provide the complete administrative record

In each of these cases, the Department filed with this Court what
it identifies as the "certified administrative record" required by CIT
Rule 73.3.  ATI ECF Nos. 26, 27; CSI ECF Nos. 31, 32, 35 & 36.
However, the Department's compilation and certification of the
Administrative Records in these cases contains two curious anomalies.

First, Commerce's certification of the records in both cases states
only that "the attached documents are a true copy of the administrative
record for this proceeding."  Declaration of Carol Rose (May 5, 2021),
ATI ECF No. 26 ¶ 2; CSI ECF No. 31 ¶ 2.  Critically, Commerce did not
certify that the administrative record is "complete," as it has done in
other cases challenging the denial of Section 232 exclusion requests.

For example, in both *JSW Steel (USA) Inc. v. United States* and
*NLMK Indiana LLC v. United States*, the Department certified that it
had filed a "true *and complete* copy of the administrative record[.]"
Declaration of Carol Rose, *JSW Steel (USA) Inc. v. United States*, Court

No. 19-cv-00133 (Ct. Int'l Trade 2019), ECF No. 18 ¶ 3 (emphasis added); *see also* Declaration of Carol Rose, *NLMK Indiana LLC v. United States*, Court No. 20-cv-00050 (Ct. Int'l Trade 2020), ECF No. 20-8 ¶ 3 (emphasis added).

Of course, in both *JSW* and *NLMK*, the Department was later forced to admit that the record it certified as "complete" was, in fact, incomplete. *See JSW Steel (USA) Inc. v. United States*, Court No. 19-cv-00133 (Ct. Int'l Trade 2019), ECF No. 59 at 1; *NLMK Indiana LLC v. United States*, Court No. 20-cv-00050 (Ct. Int'l Trade 2020), ECF No. 27 at 1. Having learned its lesson, Commerce did not certify that the administrative record here is "complete" because it *cannot* do so.

In fact, when it filed the records in each of these cases, the Department filed a separate, lengthy appendix[2] of documents reflecting *ex parte* communications regarding Plaintiffs' requests (the "Supplemental Appendices"). ATI ECF No. 28; CSI ECF Nos. 33 & 34. The Government insists in both cases that these appendices are "[s]eparate and apart from the certified administrative record[.]" ATI

---

[2] The appendices in ATI and CSI are Bates stamped ATI-DOC-0001–0111; CSI-DOC--0001–0311, respectively.

ECF No. 28 at 2; CSI ECF No. 33 at 2.  According to the Government, it provided these Supplemental Appendices "in light of certain allegations raised in the complaint . . . that there were '*ex parte* communications with the Department specifically concerning Plaintiffs' exclusion requests while they were pending.'"  ATI ECF No. 28 at 2; *see also* CSI ECF No. 33 at 2.

As described below, there were in fact *ex parte* communications with the ATI and CSI Objectors regarding each of Plaintiffs' respective requests, only some of which are included within the Supplemental Appendices.  These *ex parte* contacts specifically concerned Plaintiffs' requests and were clearly relevant to the Department's decisions.  Indeed, in many cases, the Department itself initiated these *ex parte* communications.  Importantly, Commerce apparently does not even know at present if there were other similar *ex parte* communications with the Objectors.

According to the Department, it is "continu[ing] to conduct[] searches in an effort to identify . . . *ex parte* communication[s] [that] may have occurred outside of the formal exclusion request process between a party to an exclusion request and a relevant Commerce

official regarding the merits of" Plaintiffs' Requests.  ATI ECF No. 28 at 2; *see also* CSI ECF No. 33 at 2–3.  In fact, ATI has already, on its own, identified evidence of at least eight additional *ex parte* communications with the ATI Objectors regarding ATI's Requests, which were excluded from the Supplemental Appendix.  *See* Declaration of R. Matthew Burke in Opposition to Defendant's Motions for Voluntary Remand ("Burke Decl.") ¶¶ 9–13.

### 4. The Department's *ex parte* communications with the Objectors concerning Plaintiffs' Requests

It is clear that the Department, in deciding Plaintiffs' Requests, engaged in precisely the type of *ex parte* communications with the Objectors that were identified in the October 2019 OIG Management Alert.  Attached for the Court's convenience, is a separate appendix summarizing the known *ex parte* contacts between the Department and the ATI and CSI Objectors.  This compilation is, we submit, stunning. The number and nature of these ongoing, secret dialogues between the Department and the ATI and CSI Objectors suggests that the Commerce decision-makers were manifestly biased in favor of the Objectors.

Moreover, the fact that the administrative record certified by Commerce in both cases excludes these plainly relevant *ex parte* communications, demonstrates that the records are, in fact, incomplete. The fact that the Supplemental Appendices exclude other relevant *ex parte* communications demonstrates that the Department has yet to even identify and collect all of the documents relevant to its decisions denying Plaintiffs' Requests, as required to certify a complete record.

## III.   ARGUMENT

### A. The Government's Liquidation Argument Presents a Threshold Issue that Should Be Resolved First

Months after these actions were commenced, the Government argues, without authority or support, that liquidation limits the Court's broad remedial powers, and potentially deprives it of jurisdiction. Given the time that has passed, a substantial number of Plaintiffs' entries that would be covered by any exclusion granted on remand or following further post-remand proceedings before this Court have liquidated.  Accordingly, if the Government were correct (and Plaintiffs contend it is not), any remand or further proceedings would be futile and wasteful because this Court would be without authority to grant Plaintiffs a substantial portion of the relief they seek – i.e., a refund of

the wrongfully exacted tariffs.  Thus, granting a remand without first resolving this threshold issue would, on the Government's theory, be a tremendous waste of resources for this Court, the Department and the Plaintiffs.  Accordingly, we submit this issue should be resolved as a threshold matter.

It is especially important to address this question at the outset because the Government has failed to articulate any basis for its claim that liquidation would preclude this Court from awarding Plaintiffs' monetary relief in the amount equal to the wrongly exacted tariffs. While we submit that there is no provision of law supporting the Government's novel proposition that liquidation limits this Court's broad remedial powers, it is not time for a game of cat and mouse.  If the Government has a theory (and we know of none[3]) it should set it forth now so Plaintiffs can address it and the Court can resolve it.

---

[3] There are only two types of claims for which liquidation could limit this Court's statutory authority to grant "appropriate relief" under 28 U.S.C. § 2643, including reliquidation and/or refund.  That is where either (1) the plaintiff challenges a protestable determination by Customs under 19 U.S.C. § 1514(a), for which jurisdiction is or would be available under 28 U.S.C. § 1581(a); or (2) certain antidumping claims under 19 U.S.C. § 1516a, for which jurisdiction is or would be available under 28 U.S.C. § 1581(c).  Accordingly, liquidation does not limit this Court's remedial powers because this case "involves neither a protestable decision by Customs nor an action arising under 19 U.S.C. § 1516a." *J. Conrad LTD v.*

### B. The Scope of the Department's Request Is Not "Appropriate"

Plaintiffs acknowledge that a remand in some form may, as noted, be inevitable.  If so it should be ordered sooner rather than later. Plaintiffs, however, respectfully submit that the Court should ensure the procedure on remand finally affords Plaintiffs the truly fair and neutral consideration of their requests that Commerce's regulation, the APA and Due Process required Commerce to undertake three years ago.

With that goal in mind, the scope of the Department's request for remand is totally inadequate for several reasons, including the fact that that (1) the Department does not include any provisions to ensure that the new reviews will not be tainted by the same flaws, including *ex parte* communications and/or extra-record materials, as the original reviews; (2) the Department proposes leaving the door open for the decision-makers to consider unspecified new materials; (3) in CSI's case, the Department's proposal to take between 250 and 325 days to conduct its new reviews is unconscionable; and (4) the Department does not propose, as it has done in other similar Section 232 remand motions,

---

*United States*, 457 F. Supp. 3d 1365, 1379 (Ct. Int'l Trade 2020) (Baker, J.) (citing *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1312 (Fed. Cir. 2004)).

how it will address CSI's purported HTSUS designation errors Commerce cited in its Decision Memoranda.

In light of the foregoing, Plaintiffs' propose the following steps to assure a fair and meaningful remand.

### 1. Commerce must ensure that the new reviews are actually independent and impartial

First, it is obvious that to have a "new and independent review," the officials conducting the new review must not have been involved in any way in the original review and denial of Plaintiffs' Requests. A "new and independent" review conducted by the same officials who conducted the prior improper review that warranted remand in the first place presents the real possibility, if not the likelihood, that these same officials will simply seek to "paper over" their prior prejudged decisions.

Yet, the Government's proposed remand fails to address this at all, apparently wishing to remain free to have the review conducted by the same Department officials that engaged in the prior tainted effort. That, we submit, is totally unacceptable.

Thus, to ensure that the new decisions are independent, Commerce's decisions on remand should (1) identify the officials that conducted the new review of each request, (2) specify the efforts taken

to shield those new decision-makers from the prior *ex parte* communications, and (3) include a certification from the reviewers that they did not review any of the prior *ex parte* communications, or discuss Plaintiffs' Requests with any Department personnel involved in either the original review and denial of Plaintiffs' Requests or the prior *ex parte* communications.  This is necessary to ensure that this new review is truly independent, impartial and not tainted.

## 2. Commerce's ability to consider "any other information" on remand should be narrowly circumscribed

The Government proposes that on remand Commerce will limit its review to "(1) the original exclusion request; (2) the parties' original objections, rebuttals and sur-rebuttals[;] and (3) *any other information that the decision-maker considers*, which will be documented in the record."  ATI ECF No. 35 at 8 (emphasis added); CSI ECF No. 44 at 7 (emphasis added).  The Government provides no indication of what this third catchall category of "other information" might include.  While the parties could wait and see what, if any, such information that is, it is better to set the ground rules now.

Given the flaws in the prior review, the Department suggests it will somehow recreate 2018 now.  But, it says, it nevertheless might

want to reopen the record to accept new evidence or information.  What new information?  How would Commerce receive that new evidence or information?  What is the transparent process it will follow?  The Government answers none of these questions, following instead a "just trust us" approach.  But, in light of the history, that is inadequate.

Under the circumstances, and in light of the history, the Department should avoid considering any materials other than the original formally submitted requests, objections, rebuttals and sur-rebuttals.  But if Commerce is to consider any information other than that contained in the original formal submissions, it should advise the Court and the parties of the information and the source of the information.  It should not only include those items in the new record, it should also provide a full explanation for how and why it determined that it was necessary to consider such new information.

### 3. The protracted timeframe proposed for re-reviewing CSI's Requests is unconscionable

In CSI's case, the Department proposes deciding its Requests in four tranches, with a decision in between 250 and 325 days.  This protracted schedule under which Commerce would not complete its review until the fall of 2022, is unreasonable.  CSI's Requests were in

most cases submitted more than three years ago and should have been decided in 106 days.  The suggestion now that CSI should wait almost another year to have (what it hopes will be) a fair resolution of its 2018 Requests, is unconscionable.  And the Department's excuse for this inordinate delay – i.e., that it must first decide requests filed in 2021 – is nonsensical.

Commerce created the situation that requires it to seek a new review of these years-old requests.  It was the Department that failed to adhere to its own regulations, the requirements of the APA and basic notions of Due Process, not CSI.  CSI has suffered enough.  It is wholly unreasonable to further delay these decisions by an additional 9 to 12 months.

Commerce is typically afforded 90 days to issue decisions on remand.  *See, e.g.*, *JSW Steel*, 466 F. Supp. 3d at 1333 (providing the Department with 90 days to issue a decision on remand).  Indeed, in ATI's case, the Government has proposed 95 days to issue its new decision.  The new decisions on CSI's Requests should likewise be made in 95 days.

### 4. Commerce must offer CSI a procedure for addressing purported HTSUS designation errors

The Department's denials of at least 106 of CSI's 2018 Requests state that the request "has not met the requirements for consideration as a 'complete submission' under paragraph (h) of Supplement No. 1 to 15 CFR Part 705" because "the product description is inconsistent with the claimed classification under the Harmonized Tariff Schedule of the United States." *See, e.g.*, CSI ECF No. 36-5 at 120. This is despite the fact that this supposed ministerial error did not prevent the Department from both accepting these requests as "complete" at the time of filing and supposedly considering the merits of the requests and denying them. For another 15 of CSI's 2020 Requests, Commerce cited CSI's purported incorrect product identification as the only basis for its denials, even though here too the Department had accepted the requests as "complete" when they were filed.

As this Court found in *JSW Steel*, without further explanation a denial based on such purported ministerial errors is arbitrary and capricious because Commerce did not "indicate why an incorrect HTSUS statistical reporting number interferes with its ability to consider the substance of the request or why it does not ask for

clarification as to the correct statistical reporting number." *JSW Steel*, 466 F. Supp. 3d at 1331.

The Government apparently recognizes that the denial of an accepted request on this basis is problematic and, hence, in other cases where it is also seeking a voluntary remand the Government has proposed offering plaintiffs "a reasonable amount of time on remand to resolve the Harmonized Tariff Schedule (HTS) issue with Customs & Border Protection" and acknowledges that once the issue is resolved "Commerce will then issue a new determination." *See, e.g.*, *Evraz Inc. v. United States*, Court No. 20-cv-03869 (Ct. Int'l Trade 2020), ECF No. 62 at 2. Due to what is an apparent oversight, Commerce has failed to offer CSI any similar procedure.[4] CSI therefore submits that it should be afforded the same procedure to address this issue as the Government has afforded others in its remand motions. However, CSI further submits that resolution of this clerical HTSUS issue should be done

---

[4] Of course, it would be arbitrary for Commerce to treat CSI differently from these similarly situated plaintiffs by not affording CSI a similar opportunity to address these purported ministerial errors. *See SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) ("[A]n agency action is arbitrary when the agency offer[s] insufficient reasons for treating similar situations differently." (quoting *Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996)).

simultaneously with any substantive review on remand, to avoid any further unnecessary delay in the process.

## IV.   CONCLUSION

The Government acknowledges that the process Commerce followed and its resulting decisions were, to put it politely, "problematic."  The best the Department can offer is to do it all over again.  But in a bizarre twist the Government goes on to claim that, even if Commerce grants Plaintiffs' requests on remand, liquidation would preclude this Court from awarding Plaintiffs any relief.  This is a threshold issue that should be resolved now to avoid a needless waste of this Court's and the parties' time and resources pursuing what the Government suggests would be a pointless remand.

Once this threshold issue is resolved, we believe a remand with instructions to conduct the new review in a manner that ensures that the new decisions are truly "new and independent" would be appropriate.  It is, of course, pivotal that the review not only be untainted by the same problems that necessitated remand in the first place, but that it also result in a reasoned decision which enables this Court to conduct an appropriate review of the process and decisions.

Plaintiffs therefore respectfully request that the Court delay resolution of Defendant's Remand Motions pending resolution of the effect, if any, of liquidation on the Court's authority to grant Plaintiffs the relief sought in their Complaints, and Order that:

(a) Defendant shall submit by September 7, 2021 a brief setting forth the basis for its claim that Plaintiffs are not entitled to any monetary relief with respect to any entries that have liquidated; and

(b) Plaintiffs shall file a joint brief in response by September 30, 2021.

Following resolution of the liquidation issue, to the extent appropriate, Plaintiffs request that the Court issue an Order remanding ATI's Requests and CSI's Requests to the Department for reconsideration, with the following instructions:

(a) The Department is to conduct a new and independent review of each of ATI's and CSI's Requests on a record limited to: (1) the original exclusion requests; and (2) the parties' original objections, rebuttals and sur-rebuttals;

(b) To the extent the Department decision-makers intend to consider any other information, the Department shall advise the Court and the parties of the information it intends to consider and provide a full explanation as to how and why it determined that it was necessary to consider such new information;

(c) The review shall be conducted by Department officials that were not in any way involved in the original consideration and

investigation of Plaintiffs' Requests, and who did not participate in any *ex parte* communications with any interested parties, including Plaintiffs or the ATI or CSI Objectors or any representative thereof, concerning Plaintiffs' Requests.  The Department's decision for each Request on remand shall (1) identify the officials who conducted the new reviews of each request; (2) specify the measures taken to ensure that the officials conducting the reviews have not participated in or otherwise considered any *ex parte* communications or other extra-record submissions of any interested party; (3) include a certification from such officials that they did not engage in any *ex parte* communications with the ATI or CSI Objectors, review any such prior *ex parte* communications, or discuss Plaintiffs' Requests with any Department personnel involved in the original review and/or decision to deny Plaintiffs' Request;

(d) The Department shall file its remand determinations with respect to each Request within 95 days; and

(e) To the extent the original decision on any Request identified any alleged error in the product description or HTSUS designation, the Department shall allow CSI a reasonable opportunity to address such issues, which shall occur in parallel with, and shall not toll or stay, the 95-day period for the Department to submit its determinations on remand.

Dated:   New York, New York
         August 16, 2021

                      Respectfully submitted:

                      **CHAFFETZ LINDSEY LLP**

                    By:_____/s/ Sanford Litvack_____

                      Sanford Litvack
                      Andrew L. Poplinger
                      R. Matthew Burke
                      Rebecca Meyer
                      1700 Broadway, 33rd Floor
                      New York, NY 10019
                      Tel. (212) 257-6960
                      Fax. (212) 257-6950
                      s.litvack@chaffetzlindsey.com
                      a.poplinger@chaffetzlindsey.com
                      r.m.burke@chaffetzlindsey.com
                      r.meyer@chaffetzlindsey.com

                      *Counsel for Plaintiffs Allegheny*
                      *Technologies Incorporated and*
                      *Allegheny & Tsingshan Stainless, LLC*
                      and *California Steel Industries, Inc.*

# APPENDIX

## APPENDIX

## SUMMARY OF EX PARTE COMMUNICATIONS

*Ex Parte Communications with the ATI Objectors*

- On May 23, 2018, representatives of AK Steel and other domestic steel producers, met with Deputy Assistant Secretary of Commerce for Export Administration Matthew Borman to discuss the Section 232 process.  ATI-DOC-0001.[5]  Mr. Borman was the final decision-maker who later signed the BIS Memoranda denying Plaintiffs' requests.  AK Steel's representatives implored that the Department should "limit[] [the] exclusions granted."  ATI-DOC-0008.

- On May 29, 2018, AK Steel representatives, joined by other steel producers, met with ITA Undersecretary Gilbert Kaplan and other high-level ITA decision-makers, including Deputy Assistant Secretary for Policy and Negotiations P. Lee Smith.  ATI-DOC-0003–11.  The only disclosure of the substance of this meeting comes from a mostly illegible scan of handwritten notes from an undisclosed note-taker, stating that that the Department should "give US producers [the] benefit of [the] doubt" with respect to their Section 232 objections.  ATI-DOC-0006.

- On June 6, 2018, Renee Filiatruat, Vice President for External Relations, Labor and Ligation at AK Steel, wrote to Brad Botwin, Director, Industrial Studies, Office of Technology Evaluation at BIS, and Mark Crawford, Senior Trade & Industry Analyst at BIS "to provide . . . some additional,

---

[5] References to the Supplemental Appendix of potential *ex parte* communications, ATI ECF No. 28, are to the Bates numbering, ATI-DOC-0001–0112.

compelling background information that is relevant to ATI's requests."  ATI-DOC-0012.

- On July 13, 2018, Mr. Crawford wrote Beth Ludwig, Corporate Manager, Government & Public Relations at AK Steel, asking to "speak to someone at your company TODAY . . . to determine" AK Steel's slab capacity.  Neither this email nor AK Steel's response was disclosed in the Supplemental Appendix. Burke Decl. ¶¶ 7, 7(a) & Ex. 2.

- On July 19, 2018, AK Steel's Ms. Ludwig wrote to BIS's Mr. Borman to thank him "for taking the time to speak with me last week" concerning the Section 232 tariffs and to set out further concerns related to the tariffs.  Burke Decl. Ex. 3.  Neither this email nor the existence or substance of Ms. Ludwig's prior meeting with Mr. Borman are disclosed in the Supplemental Appendix.  The available information regarding the meeting and subsequent exchange between AK Steel and Commerce was disclosed in response to ATI's request under the Freedom of Information Act ("FOIA").  Burke Decl. ¶¶ 7, 7(b).[6]

- On July 27, 2018, AK Steel's Ms. Ludwig wrote to BIS's Mr. Borman that the Department should "**deny ATI's exclusion requests**."  ATI-DOC-0049–51 (emphasis in original).

- On August 13, 2018, an undisclosed contact occurred between AK Steel and the Department.  The existence of this contact was revealed only by the filename of an attachment to an email, which was publicly filed in the supplemental appendix in

---

[6] On February 17, 2020, ATI propounded a FOIA request against BIS seeking documents related to the Department's denials of ATI's Requests and the Department's *ex parte* contacts with the ATI Objectors.  Burke Decl. ¶¶ 5–6 & Ex. 1.  In response, BIS produced 480 pages of documents.  Burke Decl. ¶ 6 & Ex. 1.

*North American Interpipe, Inc. v. United States*, Court No. 20-cv-03825 (Ct. Int'l Trade 2020).  Burke Decl. ¶¶ 7, 7(c) & Ex. 4.

- On August 16, 2018, AK Steel CEO Roger Newport held a teleconference with Secretary of Commerce Wilbur Ross and Mr. Borman "to discuss the Allegheny Technologies Incorporated (ATI)-Tsingshan stainless steel slab exclusion request."  ATI-DOC-0044.  The substance of this meeting was not disclosed in the Supplemental Appendix.

- On August 20, 2018, AK Steel's Ms. Ludwig wrote to BIS's Mr. Botwin to notify the Department that AK Steel would "provide [ATS] slab but [ATS] needed to send [AK Steel] a request for a quote."  ATI-DOC-0047.

- On September 5, 2018, AK Steel's Ms. Ludwig wrote BIS's Mr. Borman to further notify the Department that AK Steel "received a formal request for a quote from ATI" and that AK Steel "provided them with a quote . . . for the full volume requested and we wanted to be sure the record stands clear on that detail."  ATI-DOC-0049.

- On December 10, 2018, BIS's Mr. Crawford wrote AK Steel's Ms. Ludwig to ask "[h]ow much spare slab production capacity does AK now have [. . .] including swing capacity from stainless to carbon steel[.]"  ATI-DOC-0057.

- On January 28, 2019, AK Steel's Ms. Ludwig wrote Earl Comstock, Director of Policy and Strategic Planning at the Department of Commerce, and Mr. Botwin to report AK Steel's decision to "close the largely idled Ashland Works facility" and to provide financial and production information concerning AK Steel's performance in 2017 and 2018.  Burke Decl. Ex. 5.  AK Steel's capacity to produce slabs at Ashland was relevant to the merits of ATI's Requests.  This communication was not

disclosed in the Supplemental Appendix.  Burke Decl. ¶¶ 7, 7(d).

- On March 5, 2019, Deanna Tanner Okun, an attorney for Outokumpu, wrote BIS's Mr. Botwin: "Hi Brad, Not to pester, but Outokumpu remains very concerned about ATI's statements about their efforts to convince BIS to grant the product exclusion requests . . . ."  ATI-DOC-0105.  Ms. Okun's email plainly indicates that she had previously been in contact with Mr. Botwin concerning ATI's Requests, but the Supplemental Appendix contains no record of these prior communications.

- On March 26, 2019, BIS's Mr. Crawford wrote AK Steel's Ms. Ludwig, "[o]ur office needs a technical schedule of all steel slab product sizes (thickness, width, and length) manufactured by AK Steel.  Please provide me with a copy of it THIS MORNING, please."  ATI-DOC-0086.  The Supplemental Appendix does not contain Ms. Ludwig's response.  Burke Decl. ¶¶ 7, 7(e).  The Department has made Ms. Ludwig's response public in the record of another Section 232 review action, although the substance is redacted.  Burke Decl. ¶ 7(e) & Ex. 6. Shortly thereafter, Mr. Crawford replied to ask whether AK Steel's production process would allow for "deviation in slab physical size."  Burke Decl. Ex. 7.  Again, Mr. Crawford's communication was not disclosed in the Supplemental Appendix.  Burke Decl. ¶¶ 7, 7(f).

- On March 27, 2019, Geoff Pfeiffer, General Manager – Specialty Steel Sales at AK Steel, wrote Mr. Crawford, to provide further information concerning AK Steel's purported slab capabilities.  ATI-DOC-0087–103.

- On March 27, 2019, Mr. Botwin sent an internal email to Nazak Nikakhtar, Assistant Secretary for Industry and

Analysis at ITA, on the subject of ATI's Requests.  "We have talked with AK Steel," Mr. Botwin wrote.  Burke Decl. Ex. 8. Unfortunately, the Department redacted Mr. Botwin's description of his conversation with AK Steel.  The email between Mr. Botwin and Ms. Nikakhtar was not disclosed in the Supplemental Appendix; ATI obtained it through its FOIA request.  Burke Decl. ¶¶ 7, 7(g).

- On April 4, 2019, The CEOs of Outokumpu and NAS met with Gary Taverman, Acting Assistant Secretary for Enforcement and Compliance at ITA, and other decision-makers from the Department to "stress[] that [ATI's Requests] should be denied."  ATI-DOC-0112.

- On April 3, 2019, BIS's Mr. Crawford wrote AK Steel's Ms. Ludwig twice within two hours, urgently demanding "ASAP confirmation TODAY of HTSUS codes for . . . stainless steel slab that you can wholesale."  ATI-DOC-0106–108.  Ms. Ludwig responded later that night with HTSUS codes including those covered by ATI's Requests.  ATI-DOC-0108.  On the same day, Mr. Crawford wrote Mr. Benjamin Caryl of United States Steel Corporation ("U.S. Steel") with the same urgent request and to inquire whether U.S. Steel would be "reopening [its] Lorraine OH stainless facility – and if so how much stainless slab production would be [sic] available to wholesale??"  Burke Decl. Ex. 9.  The Department's email to U.S. Steel was not disclosed in the Supplemental Appendix, nor was any response from Mr. Caryl.  Burke Decl. ¶¶ 7, 7(h).

- On April 19, 2019, The Department wrongfully denied ATI's Requests.  Mr. Borman, who was a party to the majority of these *ex parte* contacts, signed the denials.

*Ex parte Communications with the CSI Objectors*

The Department likewise engaged in similar *ex parte* communications with the CSI Objectors.  In the interest of time and space, we respectfully refer the Court to the Supplemental Appendix in CSI case,[7] but we highlight here some illustrative examples:

- In handwritten notes regarding a meeting between Commerce officials and U.S. Steel concerning "slab", an unidentified author writes, "deny requests."  These notes also record that U.S. Steel represented that it "can serve [the] West Coast too."  CSI-DOC-0023.  CSI's exclusion requests particularly noted difficulties the objectors had delivering slabs to the West Coast.

- A call was scheduled on July 20, 2018 between Nucor CEO John Ferriola and Secretary Ross "to continue the[ir] dialogue … on the President's steel 232 remedy, particularly the pending exclusion requests for semi-finished slab."  CSI-DOC-0221.

- Todd Young, U.S. Steel's Managing Director – Government Affairs, wrote Department officials on July 23, 2018 to "ensure you were aware" that the President was visiting a U.S. Steel facility, "especially with several active matters pending at the Department, including Section 232 exclusion requests for slab."  CSI-DOC-0104.

- Secretary Ross held a meeting on July 30, 2018 with Nucor CEO John Ferriola "to continue his dialogue" with the Secretary "on the Section 232 remedies, particularly the pending exclusion requests for steel slab."  CSI-DOC-0095.

---

[7] *See* CSI ECF No. 33 & 34.  References to the Supplemental Appendix of potential *ex parte* communications are to the public record, CSI ECF No. 33, and the Bates numbering, CSI-DOC-0001–0312.

The briefing memo specifically lists CSI as one of the relevant requesters.

- In a December 10, 2018 email, Mr. Crawford inquired with Benjamin Caryl, U.S. Steel's associate general counsel, "[h]ow much AVAILABLE CAPACITY does U.S. Steel now have?  How much of it can be shipped to California at competitive prices??"  CSI-DOC-0204.  CSI is the only California-based company that requested exclusions for slab.

- Warren Payne, an outside advisor for U.S. Steel wrote to Mr. Borman and other Department personnel on December 20, 2018, "CSI is buying slabs from US Steel's Granite City facility (the facility the President visited a couple months ago)."  CSI-DOC-0210.  He went on to claim, "I think this pretty clearly addresses questions about the ability of the domestic industry to supply the West Coast."  *Id.*

- A meeting was held on February 27, 2019 between US Steel representatives and Under Secretary Kaplan and Messrs. Smith and Taverman from ITA.  The meeting planner notes that "U/S Kaplan met with US Steel in November regarding 232 exclusion requests on slab products" and US Steel wanted to "provide an update."  CSI-DOC-261.  The attached talking points specifically identify CSI as one of the companies requesting exclusions for slab.  CSI-DOC-262.

## CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedure 2(B)(1), the undersigned certifies that Plaintiffs' Memorandum of Law in Support of Its Motion for Judgment on the Agency Record, filed on July 12, 2021, complies with the word limitation requirement.  The word count for Plaintiffs' Memorandum of Law, as computed by Chaffetz Lindsey LLP's word processing system, is 7,205.

/s/ Sanford Litvack
Sanford Litvack