# UNITED STATES COURT OF INTERNATIONAL TRADE
## Before The Honorable M. Miller Baker, Judge

| | |
|---|---|
| CALIFORNIA STEEL INDUSTRIES, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant*, <br><br> and <br><br> UNITED STATES STEEL CORPORATION, <br><br> *Proposed Amicus Curiae* | Court No. 21-00015 |

## UNITED STATES STEEL CORPORATION'S MOTION FOR LEAVE TO FILE COMMENTS ON REMAND REDETERMINATION AS *AMICUS CURIAE*

1. Pursuant to Rules 7(b) and 76 of the Rules of the U.S. Court of International Trade ("USCIT"), United States Steel Corporation ("U. S. Steel") hereby requests leave to file a brief as *amicus curiae* in this proceeding.

2. USCIT R. 76, rooted in the court's national jurisdiction, expressly provides for *amicus curiae* participation with leave of the court. *Amicus curiae* participation supports the administration of

justice without imposing a significant burden on either the court or the parties and, therefore, "should {be} freely give{n} . . . to outsiders with indirect economic interests to present their views. . ." *PrimeSource Bldg. Prods., Inc. v. United States*, 494 F. Supp. 3d 1307, 1335 (Ct. Int'l Trade 2021) (Baker, J., concurring).

3.    Judicial precedent supports U. S. Steel's participation as *amicus curiae*. *Amicus* briefs assist the court more in instances where, as here, the *amicus* has a unique perspective or specific information that can assist the court beyond what the parties can provide. *Irving Paper Ltd. v. United States*, 296 F. Supp. 3d 1369, 1375 (Ct. Int'l Trade 2018). U. S. Steel is a leading U.S. producer of, *inter alia*, semi-finished steel slab and a longtime supplier of steel slab to Plaintiff California Steel Industries, Inc. ("CSI"). U. S. Steel provided information to the Department of Commerce ("Commerce") through the administrative actions leading to this litigation. That record was recently reevaluated in Commerce's voluntary remand redetermination. *See* ECF 94. CSI's Comments on the remand result include unfounded interpretations and inaccurate representations of information added to administrative record by U. S. Steel. *See generally* ECF 103. As the original contributor

of such information, U. S. Steel can provide the court with helpful contextual information not available from either party regarding the domestic steel industry and its ability to supply commercial quantities of domestically manufactured steel slab to inform the court's decision-making in this matter.

4.      U. S. Steel's participation as an *amicus curiae* in this proceeding is desirable and benefits the court. In addition to contextualizing factual information benefiting the court's review, U. S. Steel anticipates that its comments – although submitted concurrently with Defendants' comments – will present alternative legal arguments and issues for the court's consideration, specifically with regard to the court's orders of March 7, 2024 and April 3, 2024, that will not otherwise be presented by either party. ECF 99 and 101. Commerce officials and industry representatives, including U. S. Steel, devoted considerable time and effort to developing the administrative record for this court. Commerce and U.S. taxpayers deserve this court's consideration of the Plaintiff's claims on the basis of complete information and a complete understanding of all information on the administrative record. Although judicial review in this matter is based

on the administrative record, U. S. Steel respectfully contends that it possesses information that will help the court evaluate and analyze the claims in CSI's comments on Commerce's remand results. *See generally* ECF 103.

5.     U. S. Steel has an interest in strong enforcement of the section 232 remedy, from which Plaintiff has requested exemption. This court earlier found that U. S. Steel does not have a direct interest in the exclusion requests at issue here because U. S. Steel has an indirect, economic interest in the outcome of this proceeding. ECF 23 at 21-22. In that opinion, this court "reiterated its willingness to entertain motions to appear as *amici curiae*." *Id.* at 4. Accordingly, U. S. Steel requests to participate in this matter as an *amicus*, not to support the position of either party or to gain relief but instead to provide issues and advice for the court not presented by either party in support of appropriate enforcement of the section 232 remedy.

6.     U. S. Steel's participation as *amicus curiae* will not require reopening the record, extending the briefing schedule, or imposing any substantial burden on the parties. *Cf. PrimeSource,* 494 F. Supp. 3d at 1334–35 n.40 (discussing factors that disrupt the merits briefing

schedule and weigh against allowing intervention). Accordingly, providing for U. S. Steel's participation as *amicus curiae* will not prejudice the interests of the parties in this proceeding.

7.     This motion is timely filed in accordance with Rule 76 and the court's Amended Scheduling Order of April 3, 2024. ECF 101 at 1.

8.     In conformity with Rule 76, U. S. Steel conditionally files a brief as *amicus curiae* concurrently with this motion.

Respectfully submitted,

/s/ Lydia C. Pardini

Lydia C. Pardini
Alissa M. Chase
Joonho Hwang

**POLSINELLI PC**
1401 Eye Street NW, Suite 800
Washington, DC 20005
(202) 626-8344
lpardini@polsinelli.com

May 20, 2024

*Counsel to United States Steel Corporation*

# UNITED STATES COURT OF INTERNATIONAL TRADE
## Before The Honorable M. Miller Baker, Judge

| | |
|---|---|
| CALIFORNIA STEEL INDUSTRIES, INC., <br> *Plaintiff,* <br><br> v. <br><br> UNITED STATES, <br> *Defendant,* <br><br> and <br><br> UNITED STATES STEEL CORPORATION, <br> *Amicus Curiae* | Court No. 21-00015 |

## ***AMICUS CURIAE* UNITED STATES STEEL CORPORATION'S BRIEF IN RESPONSE TO THE COURT'S ORDERS OF MARCH 7, 2024 AND APRIL 3, 2024**

In support of United States Steel Corporation's ("U. S. Steel")

Motion for Leave to File a Brief as *Amicus Curiae*, U. S. Steel files this

brief in response to the court's orders of March 7 and April 3, 2024.

/s/ Lydia C. Pardini

Lydia C. Pardini
Alissa M. Chase
Joonho Hwang
**POLSINELLI PC**

May 20, 2024            *Counsel to United States Steel Corporation*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................ii

TABLE OF AUTHORITIES ................................................... iii

I.   Introduction.................................................................1

II.   U. S. Steel's Participation as *Amicus Curiae* Supports the Efficient and Efficacious Administration of Justice in this Matter ........................4

A.   U. S. Steel Meets the Criteria for an Amicus Curiae ....................5

B.   U. S. Steel Can Provide Information Helpful to the Court in Its Review of the Issues Presented..............................7

C.   U. S. Steel Presents Arguments Not Presented by Either Party . 8

D.   The Interests of Justice Weigh in Favor of Granting U. S. Steel's Motion to Participate as Amicus Curiae................................9

III.   The Administrative Record Demonstrates that Commerce Did Not Act in an Arbitrary or Capricious Manner in Deciding CSI's Exclusion Requests .....................................9

IV.   CSI's Comments on the Remand Results Distort Information in the Administrative Record ..................................12

A.   CSI Incorrectly States the Legal Standard for Commerce's Evaluation of a Section 232 Exclusion Request ....................12

B.   U. S. Steel Has Both the Capability and Ample Capacity to Supply CSI ........................................17

C.   U. S. Steel's Actions Demonstrate that It is Interested, Willing, and Able to Supply CSI ................................19

V.   Conclusion ................................................................21

# TABLE OF AUTHORITIES

## Cases

*Advanced Sys. Tech., Inc. v. United States*, 69 Fed. Cl. 355, 357 (2006) . 4

*Am. Satellite Co. v. United States*, 22 Cl. Ct. 547, 549 (1991) ................. 4

*Ass'n of Am. School Paper Suppliers v. United States*, 683 F. Supp. 2d 1336, 1328 (Ct. Int'l Trade 2010) ............................................................ 4

*Changzhou Hawd Flooring Co., Ltd., et al v. United States*, F. Supp. 3d 1353 (Ct. Int'l Trade 2014) ........................................................... 1, 5, 8

*Corning Gilbert Inc. v. United States*, 837 F. Supp. 2d 1303 (Ct. Int'l Trade 2012) ........................................................................................ 1

*Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.*, 51 F. upp. 972, 973 (D. Mass. 1943) ........................................................ 6

*In re Opprecht*, 868 F.2d 1264, 1266 (Fed. Cir. 1989) .............................. 1

*Irving Paper Ltd. v. United States*, 296 F. Supp. 3d 1369 (Ct. Int'l Trade 2018) ................................................................................. passim

*JSW Steel (USA) Inc. v. United States*, 466 F. Supp. 3d 1320, 1328 (Ct. Int'l Trade 2020) ................................................................................ 10

*Manuli Autoadesivi, S.P.A. & Manuli USA, Inc. v. United States*, 602 F. Supp. 96 (Ct. Int'l Trade 1985) ............................................................. 6

*NLMK Pennsylvania, LLC v. United States*, 558 F. Supp. 3d 1401, 1406 (Ct. Int'l Trade 2022) ....................................................................... 10

*North Am. Interpipe, Inc. v. United States*, 519 F. Supp. 3d 1313 (Ct. Int'l Trade 2021) ................................................................................ 6

*PrimeSource Bldg. Prods., Inc. v. United States*, 494 F. Supp. 3d 1307, 1335 (Ct. Int'l Trade 2021) (Baker, J., concurring) .............................. 5

*Seneca Foods Corp. v. United States*, 617 F. Supp. 3d 1316 (Ct. Int'l Trade 2023) ....................................................................................... 17

*Siam Food Products Pub. Co., Ltd. v. United States*, 24 F. Supp. 2d 276, 280 (Ct. Int'l Trade 1998) ................................................................... 5

*Stewart-Warner Corp. v. United States*, 4 CIT 141, 142 (Ct. Int'l Trade 1982) ................................................................................................ 8

*Voices for Choices v. Illinois Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003) ................................................................................................ 8

**Statutes**

28 U.S.C. § 1581(i) ........................................................................ 2
5 U.S.C. § 706 ............................................................................. 10

**Rules**

USCIT R. 76 .................................................................................. 1

**Other Authorities**

*Presidential Proclamation 9705, Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11,625 (Mar. 15, 2018) ....................... 12, 13

*Section 232 Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81,060 (Dec. 14, 2020) ............................................... 14, 15, 16

*Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*, 83 Fed. Reg. 46,026 (Sept. 11, 2018) ................................................................................ 13

*Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*, 83 Fed. Reg. 46026 (Sept. 11, 2018) ................................................................................ 15

## I.    Introduction

Rule 76 of the Rules of the U.S. Court of International Trade ("USCIT") ("the Rules") provides that "{t}he filing of a brief by an *amicus curiae* may be allowed upon a motion . . . or at the request of the court." USCIT R. 76. A motion to file an *amicus* brief may be granted at the court's discretion. *Changzhou Hawd Flooring Co., Ltd., et al v. United States*, F. Supp. 3d 1353, 1356 (Ct. Int'l Trade 2014) (citing *In re Opprecht*, 868 F.2d 1264, 1266 (Fed. Cir. 1989)).

Rule 76 "finds a parallel in Rule 29 of the Federal Rules of Appellate Procedure." *Corning Gilbert Inc. v. United States*, 837 F. Supp. 2d 1303, 1305 (Ct. Int'l Trade 2012). Rule 76 is "unique to the U.S. Court of International Trade as a trial-level court" due to the "hybrid nature of the subject matter jurisdiction" of the court, where "the court functions as a federal district court hearing cases *de novo*" in some actions, while, in other actions, "the court functions as a federal circuit court of appeals, reviewing determinations based on the record made before an administrative agency." *Id.* at 1305-06. This court has said that "Rule 76 . . . should typically find application in those actions where the court functions as an appellate court." *Id.* at 1306.

Accordingly, United States Steel Corporation's ("U. S. Steel") motion to participate in these proceedings as an *amicus curiae* is appropriate in this matter, which arises under the court's jurisdiction under 28 U.S.C. § 1581(i) and reviews a challenge to the Department of Commerce's ("Commerce") decision with regard to requests for exclusions from tariffs arising from Presidential action under section 232 of the Trade Expansion Act of 1962. ECF 2 at 6.

This court previously found that U. S. Steel lacks a direct economic interest in the disposition of the exclusion requests under consideration in this litigation and, therefore, is ineligible to participate as intervenor. ECF 23 at 21-22. In that opinion, this court "reiterated its willingness to entertain motions to appear as *amici curiae*." *Id.* at 4.

The balance of factors supports U. S. Steel's participation as *amicus curiae* in this proceeding. *See Irving Paper Ltd. v. United States*, 296 F. Supp. 3d 1369 (Ct. Int'l Trade 2018). U. S. Steel meets the criteria for an *amicus curiae* and can provide benefit to the court by providing information that is not only helpful to the court in its review of the issues presented, but also presents arguments not fully explored in the submissions of either party. As a domestic steel producer and an

active participant in the underlying administrative actions, U. S. Steel can provide a unique perspective to the court on the facts and issues in this case. In particular, U. S. Steel is uniquely positioned to correct misstatements regarding U. S. Steel's production capacity, capabilities, and intentions proffered in California Steel Industries, Inc.'s ("CSI") comments on Commerce's remand results. U. S. Steel therefore approaches the court with this request to help the court make a fully informed decision in the interests of justice, U. S. national security, and enforcement of the section 232 measures.

Accordingly, U. S. Steel hereby provides responsive comments to Plaintiff CSI's comments on the remand results issued by Commerce. As discussed below, U. S. Steel provided truthful, accurate information about its available capacity, capability, and willingness to produce and supply – as well as its long history of supplying – the steel slab described in CSI's exclusion requests; and such information constitutes substantial evidence supporting Commerce's decisions denying those requests and renders them neither arbitrary nor capricious. Having failed to present compelling information to Commerce in support of its exclusion requests, CSI now resorts to distortion of the legal standard

applied by Commerce, misrepresentation of the administrative record, and claims of bad faith. Commerce's denials of CSI's exclusion requests should be sustained.

## II.  U. S. Steel's Participation as *Amicus Curiae* Supports the Efficient and Efficacious Administration of Justice in this Matter

This court has summarized the factors courts generally consider when determining whether to grant a motion for *amicus* status, including:

> (1) whether the proposed amicus is a disinterested entity; (2) whether there is opposition to the entry of the amicus; (3) whether counsel is capable of making arguments without the assistance of an amicus; (4) the strength of the information and argument presented by the potential amicus curiae's interests; and (5) the usefulness of information and argument presented by the potential amicus curiae to the court.

*Irving Paper Ltd. v. United States*, 296 F. Supp. 3d 1369, 1373 (Ct. Int'l Trade 2018). *See also Ass'n of Am. School Paper Suppliers v. United States*, 683 F. Supp. 2d 1336, 1328 (Ct. Int'l Trade 2010) (citing *Advanced Sys. Tech., Inc. v. United States*, 69 Fed. Cl. 355, 357 (2006); *Am. Satellite Co. v. United States*, 22 Cl. Ct. 547, 549 (1991). Where, as here, a proposed *amicus curiae* has information that "will assist the court in its review of the case by presenting a view on a central issue

not otherwise represented," the participation of an *amicus curiae* is appropriate. *See id.*

### A. U. S. Steel Meets the Criteria for an Amicus Curiae

Courts have drawn a bright line between *amicus curiae* and named parties and real parties in interest. *Changzhou Hawd Flooring Co., Ltd., et al v. United States*, 6 F. Supp. 3d 1353, 1356 (Ct. Int'l Trade 2014) (citing *Siam Food Products Pub. Co., Ltd. v. United States*, 24 F. Supp. 2d 276, 280 (Ct. Int'l Trade 1998). A third party may have an economic interest in a matter but not advocate for a particular outcome as an *amicus curiae. Id.*

This court has found that where a domestic manufacturer is not entitled to intervene, *amicus* status may be a more appropriate way for the manufacturer to present its arguments and provide its unique perspective on the issues under review, provided the manufacturer is not attempting to seek, in effect, intervenor status or retroactive relief. *PrimeSource Bldg. Prods., Inc. v. United States*, 494 F. Supp. 3d 1307, 1335 (Ct. Int'l Trade 2021) (Baker, J., concurring). *See also, e.g., North Am. Interpipe, Inc. v. United States*, 519 F. Supp. 3d 1313 (Ct. Int'l

Trade 2021); *Manuli Autoadesivi, S.P.A. & Manuli USA, Inc. v. United States*, 602 F. Supp. 96 (Ct. Int'l Trade 1985).

Although traditional jurisprudence held that *amicus curiae* should be impartial, this court does not require that *amicus curiae* be disinterested parties. *See Irving Paper Ltd. v. United States*, 296 F. Supp. 3d 1369, 1373 (Ct. Int'l Trade 2018). U. S. Steel's interests in participating as an *amicus curiae* lie in presenting alternative arguments and contextual information to aid the court in its evaluation of the parties' arguments. U. S. Steel seeks to brief the court on issues from a perspective that cannot or will not be expressed or fully explored by the parties. In cases such as this one, participation as an *amicus curiae* is often considered the "most efficient{ } and almost always most expeditious{ }" way for a third party to participate in a proceeding. *See Manuli Autoadesivi, S.P.A. & Manuli USA, Inc. v. United States*, 602 F. Supp. 96, 98 (Ct. Int'l Trade 1985) (citing *Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.*, 51 F. Supp. 972, 973 (D. Mass. 1943). U. S. Steel therefore meets the criteria for an *amicus curiae* and the court should allow its participation in this proceeding.

### B. U. S. Steel Can Provide Information Helpful to the Court in Its Review of the Issues Presented

The USCIT does not have strict prerequisites for *amicus* status but generally considers "whether the submission of an amicus brief would assist the court in its review of the issues presented." *Irving Paper Ltd. v. United States*, 296 F. Supp. 3d 1369, 1373 (Ct. Int'l Trade 2018). As one of two domestic integrated steel producers and a producer of semi-finished steel slab (*i.e.*, the product that is the subject of the disputed section 232 exclusion requests), U. S. Steel can provide information helpful to the court in its review of the record. U. S. Steel is familiar with the norms of the steel industry and the U.S. market, and *U. S. Steel also has a long, continuous history of supplying the Plaintiff with significant quantities of steel slab in the grades and dimensions or weights specified in the disputed exclusion requests.* Indeed, CSI has regularly purchased – and continues to purchase – steel slab from multiple U. S. Steel facilities since before the section 232 measures were implemented in March 2018. Consequently, U. S. Steel can provide the court with technical assistance and information relevant to its assessment of the parties' arguments.

### C.  U. S. Steel Presents Arguments Not Presented by Either Party

Amicus briefs are "solely for the benefit of the Court." *Changzhou Hawd Flooring Co., Ltd., et al v. United States*, 6 F. Supp. 3d 1353, 1357 (Ct. Int'l Trade 2014) (quoting *Stewart-Warner Corp. v. United States*, 4 CIT 141, 142 (Ct. Int'l Trade 1982). An *amicus* submission "benefits the court when it 'assist{s} the judge{ } by presenting ideas, arguments, theories, insights, facts or data that are not to be found in the parties' briefs.'" *Id.* (citing *Voices for Choices v. Illinois Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003)).

U. S. Steel seeks to participate in these proceedings to provide an analysis of the issues not presented by either party. Although the court relies solely on the factual information in the administrative record that was available to Commerce at the time of its original decisions on the exclusion requests, U. S. Steel – as the subject of CSI's comments on Commerce's remand results – can provide information that contextualizes its earlier contributions to the administrative record. This information will support the court's analysis of Commerce's remand results.

**D.    The Interests of Justice Weigh in Favor of Granting U. S. Steel's Motion to Participate as Amicus Curiae**

An analysis of the relevant factors, especially the importance and unique perspective of the information that U. S. Steel offers to the court, weigh in favor of granting U. S. Steel *amicus* status in this matter. U. S. Steel does not seek a remedy from the court, but rather seeks to provide information and analysis of the legal and factual issues that will help inform the court's review of the issues. U. S. Steel does not seek to advocate for a particular party in this litigation, but rather to provide contextual information about the domestic steel industry and its ability to supply commercial quantities of steel slab for the court's consideration, which cannot be provided by either party but is essential to a considered analysis of Commerce's remand results. Accordingly, U. S. Steel's motion and interest in these proceedings are wholly consistent with *amicus* status.

**III.   The Administrative Record Demonstrates that Commerce Did Not Act in an Arbitrary or Capricious Manner in Deciding CSI's Exclusion Requests**

Under the Administrative Procedure Act ("APA"), courts review agency actions to determine if they are supported by substantial evidence and not arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law. 5 U.S.C. § 706; *see also NLMK Pennsylvania, LLC v. United States*, 558 F. Supp. 3d 1401, 1406 (Ct. Int'l Trade 2022). As noted earlier in the record of this matter, judicial review in APA cases is "generally limited to the full administrative record before the agency at the time it rendered its decision." ECF 23 at 27 (citing *JSW Steel (USA) Inc. v. United States*, 466 F. Supp. 3d 1320, 1328 (Ct. Int'l Trade 2020)).

The complete administrative record, including Commerce's remand results, provides ample information for the court to evaluate the reasoned manner in which Commerce analyzed CSI's exclusion requests and the related objections, rebuttals, and surrebuttals submitted by CSI and domestic steel producers U. S. Steel and Nucor.[1] Commerce did not seek comment from any parties in the remand redetermination but rather "decid{d} anew" to deny the litigated exclusion requests.

---

[1] Although Commerce analyzed U. S. Steel's objections first and, having determined that U. S. Steel was capable of providing the product in CSI's exclusion requests, chose to preserve agency resources by not evaluating the record information submitted by Nucor, Nucor also submitted information on the record regarding its capability to provide the product in CSI's exclusion requests, demonstrating that more than one domestic steel producer was capable of supplying the product in CSI's exclusion request.

In the remand redetermination, a Commerce Subject Matter Expert ("SME") performed an independent analysis of the administrative record, determining that domestic steel producers (*e.g.*, U. S. Steel) provided sufficient information on the record to demonstrate that the domestic industry possessed both the capability and capacity to produce the steel products described in CSI's exclusion requests. Following the SME's analysis, the Commerce decisionmaker certified that he had no role in the original decisions and, on remand, independently evaluated the information on the record (*e.g.*, the SME's analysis), not relying on any communications or decisions from the original proceedings and not directly or indirectly consider or rely upon any *ex parte* or other non-record information that may have been provided by or on behalf of any of the parties" in the remand redetermination process.[2] The decisionmaker ultimately agreed with the SME and Commerce's original decisions to deny CSI's disputed requests, finding that granting section 232 tariff exclusions for an imported steel product that at least one domestic manufacturer is

---

[2] *See, e.g.*, ECF 94 at 3-4.

capable of producing would undermine and subvert the national security goals of the section 232 measures.[3]

Accordingly, multiple Commerce officials, reviewing the administrative record independently and years apart, came to the same conclusion: U. S. Steel provided sufficient evidence of the domestic industry's capability to supply the steel product described in CSI's exclusion requests to support Commerce's denial of those requests.

## IV. CSI's Comments on the Remand Results Distort Information in the Administrative Record

### A. CSI Incorrectly States the Legal Standard for Commerce's Evaluation of a Section 232 Exclusion Request

CSI incorrectly summarizes the legal standard for Commerce's evaluation of a section 232 exclusion request where a domestic producer submits an objection. First, CSI erroneously claims that the President "directs the Department of Commerce to grant exclusions from the duties if it determines that any steel product for which an exclusion is requested is not 'produced in the United States in a sufficient and

---

[3] *See Presidential Proclamation 9705, Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11,625 (Mar. 15, 2018).

reasonably available amount or of a satisfactory quality.'"[4] In fact, the President did not "direct" Commerce to grant exclusions. The President "authorized" the Secretary of Commerce to grant relief from the section 232 tariffs "*if the Secretary determine{d} that a particular steel article should be excluded,*" with availability and national security considerations forming the basis of those determinations.[5]

Second, CSI distorts the standard for objections submitted by domestic steel producers. Commerce clearly states that the domestic industry's *capability* to produce the steel product in an exclusion request determines a domestic producer's qualification to object to a submitted exclusion request.[6] CSI incorrectly conflates capability and a domestic producer's willingness to provide the product described in an exclusion request on the requestor's terms, incorrectly suggesting that a domestic producer is only able to object only where the "producer shows it can and *will* immediately" supply the product in the exclusion

[4] ECF 103 at 6 (citing Presidential Proclamation 9705, 83 Fed. Reg. 11625 (Mar. 15, 2018)).
[5] *Presidential Proclamation 9705 of March 8, 2018, Adjusting Imports of Steel Into the United States*, 93 Fed. Reg. 11,625 (Mar. 15, 2018) (emphasis added).
[6] *See, e.g., Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*, 83 Fed. Reg. 46,026 (Sept. 11, 2018).

request.[7] Because many economic factors that have nothing to do with national security impact the terms under which a capable producer is willing to sell a product to a particular purchaser—or under which a purchaser is willing to source from a particular producer—Commerce correctly considers only capability in determining which parties can submit an objection to a section 232 exclusion request,[8] thus supporting the national security goals of the section 232 measures.

CSI relies on its own distortion of the standard for objecting to section 232 exclusion requests as the foundation for its baseless allegations that the certifications U. S. Steel submitted to Commerce were not accurate and truthful.[9] U. S. Steel provided detailed information to Commerce in the confidential attachments supporting its submissions to demonstrate its capability to produce quality and quantity of steel slab subject to each of CSI's exclusion requests.

---

[7] ECF 103 at 7.

[8] *See Section 232 Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81,060, 81,066 (Dec. 14, 2020) (noting that "business decisions should be left to the two companies involved so as to not unduly influence the functioning of the market").

[9] *See, e.g.*, ECF 103 at 3 (CSI repeatedly casts aspersions on U. S. Steel's legal certification by placing the word in quotation marks, despite the fact that U. S. Steel provided substantial factual information to Commerce to support the information it submitted publicly on the section 232 portal).

Moreover, as discussed below, U. S. Steel provided suitable steel slab to CSI throughout the period in question,[10] demonstrating that U. S. Steel was both capable and willing to supply CSI with the requested product, despite the fact that only capability determines a domestic producer's qualification to submit an objection. Accordingly, the court should reject CSI's false accusations regarding U. S. Steel's certifications.

Finally, CSI misstates Commerce's standard for evaluating section 232 exclusion requests. Commerce evaluates each exclusion request individually,[11] and to do otherwise would undermine the purpose of the section 232 measures. If Commerce considered exclusion requests submitted by a single requestor based on the total volume requested across numerous exclusion requests, individual exclusion requestors could secure section 232 tariff exclusions by simply submitting a large number of exclusion requests for quantities of a product that together exceed the domestic industry's capacity with no

---

[10] *See, e.g.*, ECF 94 at 8-9.
[11] *See, e.g.*, *Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*, 83 Fed. Reg. 46026, 46030 (Sept. 11, 2018) ("The Department is reviewing exclusion applications from domestic industry . . . on a case-by-case basis…"); *Section 232 Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81,060 81,075 (Dec. 14, 2020) (reiterating that Commerce reviews exclusion requests on a "case-by-case basis").

intention of actually importing the cumulative volume of that product.[12]

In fact, many exclusion requestors submitted requests for volumes far

exceeding their needs for this precise reason, prompting Commerce to

initiate a volume certification process in 2020.[13]

CSI first complains that Commerce was complicit with domestic

producers to "sabotage" CSI's exclusion requests and therefore

considered slab requests "*en masse*"[14] – but then repeatedly cites the

total volume of slab in its nearly 200 individual exclusion requests as a

basis for its argument that the domestic industry could not supply the

product in its exclusion request.[15] CSI cites its decision to purchase on

the spot market "in an effort to avoid paying as much as it could in

tariffs" by purchasing "any and all spot slab offers from U. S. Steel." In

truth, CSI limited the quantity of steel slab it would purchase from

---

[12] CSI admits that it imported slab pursuant to only 45 of its 193 submitted exclusion requests.  ECF 103 at 4 n.2.

[13] *See Section 232 Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81,060 (Dec. 14, 2020) ("Second, it addresses a trend identified by commenters and validated in data reviewed by Commerce—that certain exclusion requesters may have requested more volume than they may have needed for their own business purposes compared to past usage. Submitting large numbers of unneeded exclusion requests decreases the efficiency of the 232 exclusions process for potential objectors and Commerce. It also creates issues for potential objectors.").

[14] ECF 103 at 11.

[15] *See, e.g.*, ECF 103 at 4, 10, 21, 22, 23, *et al.* (claiming that "CSI requires 2,300 MTs of slab per year").

U. S. Steel, both refusing to extend an annual contract and declining additional spot offers from multiple U. S. Steel facilities.[16] Commerce's remand results note that sales records provided to Commerce demonstrated that CSI understated the amount of slab that U. S. Steel provided to CSI. Accordingly, Commerce did not merely rely on U. S. Steel's certification regarding its ability to supply slab to CSI; Commerce properly considered evidence regarding the actions of both parties, making CSI's reliance on *Seneca Foods*[17] inapt and not relevant to the steel product, supply, and sales situation in the current dispute.

### B. U. S. Steel Has Both the Capability and Ample Capacity to Supply CSI

U. S. Steel has both the capability to the produce the steel slab described in CSI's exclusion requests and ample capacity to do so. Commerce acknowledges that U. S. Steel provided information on the record to demonstrate that it can manufacture slab within the thickness and width tolerances listed in CSI's exclusion requests.[18] Despite the fact that CSI submitted exclusion requests with chemical specifications

---

[16] *See, e.g.*, ECF 94 at 8.
[17] ECF 103 at 19-20, 25 (citing *Seneca Foods Corp. v. United States*, 617 F. Supp. 3d 1316 (Ct. Int'l Trade 2023).
[18] *See, e.g.*, ECF 94 at 6-8.

spanning more than one grade of steel—technically violating

Commerce's requirement that each exclusion request submitted be for a

single steel product—U. S. Steel stated on the record that it can produce

slab to any of the range of specifications provided in CSI's exclusion

requests.[19] Consequently, Commerce found that the domestic industry

is capable of making the product in CSI's exclusion requests.

In addition to finding that the domestic industry had the

capability to supply CSI, Commerce found that the domestic industry

had the capacity to supply the volume of slab in each of CSI's exclusion

requests.[20] Commerce found U. S. Steel's statements regarding its own

available capacity to be more credible than CSI's statements,

reasonably deducing that U. S. Steel is in a better position than CSI to

know the limits of its own production schedule and ability to produce

the full volume of the requested product.[21] Moreover, as discussed

previously, CSI acknowledged that it intentionally limited the volume of

slab it would purchase from domestic steel producers, including

---

[19] *See, e.g.*, ECF 94 at 7.
[20] *See, e.g.*, ECF 94 at 8.
[21] *See, e.g.*, ECF 94 at 8-9.

U. S. Steel.[22] Consequently, Commerce was correct to disregard CSI's

counterfactual and erroneous claims about the domestic industry's

capacity to supply CSI with the steel slab in its exclusion requests,

foreclosing CSI's argument that Commerce acted in an arbitrary and

capricious manner when it denied CSI's exclusion requests.

### C.    U. S. Steel's Actions Demonstrate that It is Interested, Willing, and Able to Supply CSI

U. S. Steel's actions throughout the period in question

demonstrate that it is interested, willing, and able to supply steel slab

to CSI. U. S. Steel is a qualified slab supplier for CSI and actively ships

significant quantities of slab to CSI from multiple facilities.[23] Despite

CSI's complaints that it could not source its total slab needs from

U. S. Steel, *CSI* intentionally limited the volume of slab that it would

purchase from U. S. Steel and other domestic steel producers to save on

transportation costs.[24] Furthermore, CSI elected not to extend an

annual supply contract with U. S. Steel and even declined spot sale

offers from U. S. Steel.[25] Permitting a company that relies on imports

---

[22] *See, e.g.*, ECF 94 at 9.
[23] *See, e.g.*, ECF 94 at 8 (discussing slab purchase agreements between CSI and U. S. Steel submitted as confidential attachments to U. S. Steel's surrebuttals).
[24] *See, e.g.*, ECF 94 at 9.
[25] *See, e.g.*, ECF 94 at 8.

for the majority of its feedstock to limit purchases from qualified

domestic producers and then cites that limitation as justification for a

section 232 exclusion contravenes the purpose of the section 232

measures.

The record supports Commerce's decision in this regard, both in

the original decisions and its remand redeterminations. Commerce

found that in spite of CSI's unclear specifications with regard to both

product dimensions and chemical specifications, U. S. Steel can produce

the full range of products in CSI's exclusion requests.[26] Moreover,

despite past quality issues acknowledged on the record by both

U. S. Steel and CSI, CSI continued to consider U. S. Steel a qualified

slab supplier and continued to purchase slab from U. S. Steel, leading

Commerce to reasonably conclude that CSI's complaints about those

isolated incidents did not support the grant of a section 232 exclusion.[27]

In addition, CSI's economic arguments regarding the cost to

transport slab from east of the Mississippi River to CSI's location in the

western United States is not relevant to the domestic industry's

---

[26] *See, e.g.*, ECF 94 at 6-7.
[27] *See, e.g.*, ECF 94 at 7-8.

capability to supply the slab in CSI's exclusion requests.[28] Commerce correctly states that a "company's economic justifications for not purchasing more of the available product from domestic manufacturers . . . are not among the regulatory criteria that form part of Commerce's analysis for granting or denying a request based on availability."[29] As a joint venture established by two foreign steel producers, Japan's JFE Steel Group and Brazil's Vale Corporation,[30] CSI's business model was based on the rerolling of slab produced by its foreign joint venture partners.[31] Even if that were not the case, CSI's desire to purchase slab at a lower price is a reasonable business decision—but not one that justifies the grant of a section 232 exclusion.

## V.     Conclusion

U. S. Steel meets the criteria for *amicus* status, and the balance of factors weigh in favor of allowing U. S. Steel to participate in these proceedings as an *amicus curiae* to provide the court with alternative arguments and issues for consideration. U. S. Steel encourages the

---

[28] *See, e.g.*, ECF 94 at 9.
[29] *See, e.g.*, ECF 94 at 9.
[30] California Steel Industries, Who We Are, https://www.californiasteel.com/history.
[31] *See, e.g.*, ECF 94 at 8 (discussing CSI's decision to import slab from Brazil tariff-free under the section 232 quota rather than purchase domestically produced slab either under contract or on the spot market).

court to carefully consider CSI's misstatements and misrepresentations in its comments on Commerce's remand results. Rather than reply to the legal and factual findings in Commerce's remand results, CSI continues its trend of *ad hominem* attacks: first, baselessly accusing U. S. Steel of providing false certifications and now, repeatedly arguing that Commerce blindly believed U. S. Steel's statements on the record without acknowledging that Commerce relied on data in confidential attachments provided by U. S. Steel along with its objections and surrebuttals to support the assertions made in its public submissions. Upon receiving Commerce's remand redeterminations again denying CSI's exclusion requests, CSI ignores the fact that Commerce analysts independently reviewed the record and cited evidence on the record in support of those decisions, instead accusing Commerce of merely "reiterat{ing} its mantra."[32] Accordingly, when evaluating CSI's inflated and inaccurate statements in its Comments on the remand results, the court should consider the contextual information about the domestic steel industry, the section 232 exclusions process, and the wealth of factual record information reviewed by Commerce in the remand

---

[32] ECF 103 at 2.

redetermination. Under such circumstances, Commerce's decisions cannot possibly be deemed arbitrary and capricious.

Respectfully submitted,

/s/ Lydia C. Pardini

Lydia C. Pardini
Alissa M. Chase
Joonho Hwang

**POLSINELLI PC**
1401 Eye Street NW, Suite 800
Washington, DC 20005
(202) 626-8344
lpardini@polsinelli.com

May 20, 2024

*Counsel to United States Steel Corporation*

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief contains 4,580 words (including text, quotations, footnotes, and headings) and therefore complies with the word limitation set forth in the Court's Chambers Procedures. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

/s/ Lydia C. Pardini
Lydia C. Pardini

May 20, 2024

CALIFORNIA STEEL INDUSTRIES, INC.,

        *Plaintiff*,

v.

UNITED STATES,

        *Defendant*,

       and

UNITED STATES STEEL CORPORATION,

       *Proposed Amicus Curiae*

Court No. 21-00015

## <u>ORDER</u>

Upon consideration of the Motion for Leave to File a Brief as Amicus Curiae filed by United States Steel Corporation, and upon consideration of all other papers and proceedings herein, it is hereby

**ORDERED** that the motion is granted; and it is further

**ORDERED** that United States Steel Corporation may participate in these proceedings as *amicus curiae*.

Dated: _____

       New York, New York             M. Miller Baker, Judge