IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| CALIFORNIA STEEL INDUSTRIES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Court No. 21-cv-00015 |
| UNITED STATES, | ) ) ) |
| Defendant. | ) ) |

## DEFENDANT'S SUPPLEMENTAL BRIEF

Pursuant to the Court's order of August 14, 2024, ECF No. 128, defendant, the United States, respectfully submits this supplemental brief.

## BACKGROUND

California Steel, Inc. (CSI) challenges the Department of Commerce's (Commerce) decision to deny 193 requests for exclusions from the 25 percent tariff on steel articles that the President imposed in *Adjusting Imports of Steel Into the United States*, *Proclamation 9705*, 83 Fed. Reg. 11,625 (Mar. 8, 2018).

CSI submitted 170 exclusion requests in March 2018, seeking an aggregate exclusion from duties for about 33 net tons of slab, over 11 times its total capacity. Appx6736[1]. CSI ultimately reduced its request to 2.3 million

---

[1] "Appx" refers to the pages of the parties' joint appendix at ECF Nos. 124, 125.

metric tons (MT), representing 85 percent of its rolling capacity – and about twice its actual production in the previous year. Appx6750. These requests covered steel slab from China, Mexico, Turkey, and Russia. Compl. Counts I-IV. Commerce denied the 2018 requests in 2019. Compl. ¶¶ 59, 63, 67, 71, ECF No. 2. CSI submitted 23 additional requests covering 425 MT of steel slab from Japan in 2020, Appx22880, which Commerce denied. Compl. ¶ 75.

CSI filed its complaint in January 2021. After the Court granted our request for a voluntary remand, Commerce reassessed the records of the exclusion requests and again denied all 193 requests. ECF No. 94. The parties completed dispositive briefing on CSI's challenges to the remand results. ECF Nos. 102, 103, 107, 108, 120, 121. On August 14, 2024, the Court ordered supplemental briefing on the effect of Commerce's regulation, 15 C.F.R. pt. 705 Supp. 1(c)(6)(i) (April 21, 2020), on this matter. ECF No. 128. Specifically, the Court requested briefing on whether CSI had failed to exhaust administrative remedies under clause 1(c)(6)(i) and, if so, whether remand is warranted.

DISCUSSION

I. Clause 1(c)(6)(i) Is Prospective Only

The regulation does not provide for Commerce re-opening a closed exclusion proceeding. The regulation directs:

> If the Department denies an exclusion request based on a representation made by an objector, which is later determined to be inaccurate (*e.g.*, if the objector was not

> able to meet the requirement of being able to "immediately" supply the steel that was included in a denied exclusion request in the quantity needed), the requester may submit *a new exclusion request that refers back to the original denied exclusion request* and explains that the objector was not able to supply the steel. *The U.S. Department of Commerce would take that into account in reviewing a subsequent exclusion request.*

15 C.F.R. pt. 705 Supp. 1(c)(6)(i) (April 21, 2020) (emphasis added). Thus, if a requestor believes that an objector's statements opposing an exclusion request were inaccurate, the requestor should inform Commerce of that belief in a "*new exclusion request*" and the agency would "take that into account in reviewing a *subsequent* exclusion request." *Id.* (emphasis added).

The regulation further defines the "Validity period for exclusion requests." 15 C.F.R. pt. 705 Supp. 1(h)(1)(iv)(B). "Exclusions will generally be approved for one year, but may be valid for shorter or longer than one year depending on the specifics of the exclusion request; any objections filed; and analysis by" relevant Government agencies. *Id.* The regulation also defines "Effective date for approved exclusions," directing that "[a]pproved exclusions will be effective five business days after publication of the U.S. Department of Commerce response granting an exclusion in regulations.gov." 15 C.F.R. pt. 705 Supp. 1(h)(iii)(A). In practice, however, granted exclusion requests can be effective from the date the request was submitted until one year after the date of the final decision granting the request. *See* 232 Exclusion Process,

Frequently Asked Questions, June 19, 2019 at 12-13, available at www.bis.doc.gov/index.php/documents/section-232-investigations/2409-section-232-faq/file, last visited Sept. 5, 2024.  Accordingly, because interested parties may submit exclusion requests "at any time," 15 C.F.R. pt. 705 Supp. 1(c)(4), a party wishing to present new evidence may submit a new request "at any time," and if the request is granted, the exclusion may be effective from the date of the new request until one year after the exclusion is granted.

Indeed, in "interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the {regulation} itself." *Food Marketing Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019).  The ordinary meaning of "new" and "subsequent" in clause (c)(6)(i), does not indicate reconsideration of the "original denied exclusion request" identified in that clause.  Instead, by imparting future meaning to "new" and subsequent" requests, the regulation makes a clean break from the "original denied exclusion request."  Applying basic canons of statutory construction, where an agency "includes particular language in one section of a {regulation} but omits it in another section . . ., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation omitted).  This is doubly-so here, where the different language appears in the *same clause* of the regulation.  *See also Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461-62 (2002) (explaining that

"courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). Similarly, the words "refers back" do not connote *reconsideration*. If Commerce had intended to create an entire "reconsideration" process, it would have done so explicitly.

Moreover, reading the regulation as a whole, the results of any "new" and "subsequent" exclusion requests in clause (c)(6)(i), would be governed by the regulation's provisions regarding effective date and duration. Indeed, the Court should "look to the provisions of the whole law, and to its object and policy." *Regions Hospital v. Shalala*, 522 U.S. 448, 460 n.5 (1998) (quoting *United States Nat'l Bank of Ore. v. Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 455 (1993); *United States v. Heirs of Boisdore*, 8 How. 113, 122 (1849)). In sum, clause 1(c)(6)(i) merely provides guidance on the type of information that Commerce would consider in a "new exclusion request" that the agency would address in accordance with the regulation as a whole.

Lastly, the nature of granted exclusions, including clause 1(c)(6)(i), affords timely redress for inaccurate objections. To be sure, the regulation calls for a "new exclusion request," *id.*, but that does not deprive requestors of a reasonably timely remedy. For example, even if during the period that Commerce is deciding an initial request, evidence arises contradicting an objector's statements about ability to produce subject steel, the requestor may submit a new request immediately, "at any time." If the new request were

5

granted, it could be retroactive to the date of the new request. Or, as envisioned in clause 1(c)(6)(i), a requestor may wait for a denial. In either case, an initial objector might opt not to object, resulting in an expeditious grant, or the requestor can provide prior, contemporaneous evidence of an objector's inability to provide the requested product. In the latter example, Commerce could compare the new information with the record from the initial request and issue a "new" decision on the "subsequent" request. In either case, a granted exclusion would be effective as of the date of the subsequent request, plus one year from the date of the decision granting the request.

II. **Because The Regulation Is Prospective Only, And A Subsequent Request Can Be Submitted "At Any Time," We Do Not Contend That CSI Failed To Exhaust Administrative Remedies Under Clause 1(c)(6)(i)**

We do not contend that CSI failed to exhaust administrative remedies because a new request for an exclusion can be made "at any time," and clause 1(c)(6)(i), operates only prospectively from the date of a new request.

First, CSI's 170 exclusion requests from 2018 were its first requests for exclusions from the Proclamation 9705 tariff. Compl. ¶¶ 30-31. Accordingly, there were no earlier denied requests to which it could refer.

Second, after Commerce denied the first 170 requests in 2019, *id*. ¶ 59, CSI submitted 23 new exclusion requests covering 425,000 MT of steel slab from Japan. In those 23 subsequent requests, and consistent with the understanding that 15 C.F.R. pt. 705 Supp. 1(c)(6)(i) (April 21, 2020) operated

prospectively only, CSI referred to the earlier denials from 2019 in contending that US Steel was unable or unwilling to immediately deliver the requested steel in these later requests in sufficient quantities. *See, e.g.*, Appx22880-81. But CSI nowhere asked Commerce to reconsider the earlier 170 denials under clause (c)(6)(i). Appx20879-91. Rather, CSI focused its requests solely on its then current and future needs. *Id.* Indeed, CSI elected not to renew its requests from the other countries for which it had requested exclusions in 2018, and reduced the total volume of its requests by over 80 percent, from 2.3 million MT to 425,000 MT, possibly because it was seeking quota exclusions from the tariff for imported steel from Brazil. Appx22880. And Commerce considered these contentions in reaching its determination. Appx01016.

III. The Court Should Not Remand

Because clause 1(c)(6)(i) is prospective only, a remand is unwarranted. Even in the one case where it might have applied (the 2020 requests), CSI referred to its original exclusion requests, and Commerce "t{ook} that into account." *Id.* Accordingly, all requests are ripe for final decisions on the merits.

IV. CSI Failed To Exhaust And Waived Arguments That 15 C.F.R. pt. 705 Supp. 1(c)(6)(i) Calls For Retroactive Reconsideration

CSI did not raise any contention administratively, in its complaint, or in its merits briefing, that clause 1(c)(6)(i) calls for reconsideration of earlier denials. Accordingly, the Court should not address this question here.

7

First, because CSI did not contend administratively that clause 1(c)(6)(i) calls for reconsideration of earlier denials, the Court should disregard the issue. When a plaintiff fails to exhaust, the correct remedy when a party fails to exhaust is that it is "precluded from raising its argument." *Dorbest Ltd. v. United States*, 604 F.3d 1363, 1375 (Fed. Cir. 2010).

Second, unlike exhaustion cases, where there might be limited exceptions, CSI waived any retroactivity argument by failing to raise it in its complaint or briefing. First, it was required to provide a "short and plain statement of the claim showing that {it} is entitled to relief." USCIT R. 8(a)(2). Nowhere in its complaint does CSI contend that it was entitled to retroactive relief under clause 1(c)(6)(i). In construing the identical provision in Fed. R. Civ. P. 8(a)(2), the Supreme Court explained that the plaintiff must "plead{} factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, the complaint is bereft of any claim of retroactive application of clause 1(c)(6)(i) and, thus, the Court should not infer one here.

Similarly, nowhere in its dispositive briefing, ECF Nos. 102, 103, 120, 121, does CSI contend that clause 1(c)(6)(i) entitles it to a do-over of already denied exclusions, despite Rule 56.1(c)(1)(B)'s mandate that briefs include the "issues of law presented together with the reasons for contesting or supporting the administrative determination."

8

Finally, because CSI waited about a year to submit its April 2020 requests after Commerce's denials of its 2018 requests, CSI waived any right to an earlier effective date under clause 1(h)(iii)(A).

Accordingly, the Court should not engage with any argument that clause 1(c)(6)(i) entitles CSI to reconsideration of already denied exclusions.

                    Respectfully submitted,

                    BRIAN M. BOYNTON
                    Principal Deputy Assistant Attorney General

                    PATRICIA M. McCARTHY
                    Director

                    /s/ TARA K. HOGAN
                    Assistant Director

                    /s/ STEPHEN C. TOSINI
                    Senior Trial Counsel
                    Department of Justice
                    Civil Division
                    Commercial Litigation Branch
                    P.O. Box 480, Ben Franklin Station
                    Washington, D.C. 20044
                    Tel.: (202) 616-5196
                    Email: stephen.tosini@usdoj.gov

September 6, 2024          Attorneys for Defendant United States

CERTIFICATE OF COMPLIANCE

Pursuant to the Court's order of August 14, 2024, the undersigned certifies that Defendant's Supplemental Brief contains 1,889 words as computed by our word processing system, excluding those portions that do not count toward the word limitation. Our filing thus complies with the Court's order, which allows supplemental briefs not to exceed 7,000 words.

/s/ Stephen C. Tosini